No. 73–721. MEYERS ET AL. *v.* PENNSYLVANIA ET AL. C. A. 3d Cir.  Certiorari denied.  MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL would grant certiorari.

MR. JUSTICE DOUGLAS, dissenting.

The petitioners seek damages from the State of Pennsylvania arising from a bus accident allegedly caused by the improper design, construction, and maintenance of the highway.  Seven children were fatally injured when the bus, carrying a group of young people, rotated 180 degrees on wet pavement and went through the guardrail and over the embankment.  A study by the National Transportation Safety Board suggested that the accident was caused in part by the "low basic skid resistance of the pavement in wet weather, and the probable presence of water draining across the pavement in an abnormal manner."  It also suggested that the fatalities and injuries resulted in part from an "ineffective highway guardrail which failed to prevent the bus from rolling down an embankment."[1]  In bringing the action in Federal District Court petitioners contended that the State was liable because it had failed to make the road conform to applicable federal highway regulations which were binding upon Pennsylvania because of its acceptance of federal highway funds.  The District Court dismissed the action, 344 F. Supp. 1337, and the Court of Appeals affirmed, 483 F. 2d 294, finding that petitioners had no private right of action for the State's failure to conform to the federal regulations and that the State was immune from the suit in federal court because of the Eleventh Amendment.[2]

---

[1] The District Court accepted these conclusions of the National Transportation Board as correct for the purpose of considering respondents' motions to dismiss.  344 F. Supp. 1337, 1340 n. 5

[2] "The Judicial power of the United States shall not be construed

As the District Court noted, the State here was "per forming its traditional state governmental function in designing, constructing, and maintaining highways within its own boundaries." 344 F. Supp., at 1345. But in recent years States have voluntarily subjected themselves to federal regulations in this area in order to achieve the benefits of federal funding, and thus to a significant extent the traditional state autonomy has been displaced by the federal role. Under the Federal Aid-Highway Act, 23 U. S. C. § 101 *et seq.,* the Secretary of Transportation must approve each state project, § 106 (a), and he is to withhold his approval of the plans and specifications if they are not conducive to safety, § 109 (a). Section 109 (e) requires conformance to certain safety regulations for funds to be allowed, and § 114 (a) provides that state highway construction is subject to the inspection and approval of the Secretary. Section 116 provides that the Secretary may withhold his approval of further projects if the State has not fulfilled its duty to properly maintain its highways.

The Congress has enlarged the federal role in ensuring highway safety since passage of the Federal Aid-Highway Act. In 1965 Congress added 23 U. S. C. § 135, 79 Stat. 578, requiring each State to have a federally approved highway safety program "designed to reduce traffic accidents and deaths." And because of the absence of effective state action, the following year the Congress passed the Highway Safety Act, 23 U. S. C. § 401 *et seq.,* which repealed the former § 135 (see 80 Stat. 734). Section 402 (a) provides that the Secretary promulgate regulations for the state highway safety program. Pursuant to this provision the Secretary has promulgated

to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

regulations regarding highway skid resistance and guard-railings. 344 F. Supp., at 1348 n. 14. Congress increased the federal role because state highway safety programs had "generally been missing." [3] As in the Federal Aid-Highway Program, the Secretary is to withhold federal funds from States which do not comply with the federal regulations. See 23 U. S. C. §§ 116 (c), 402 (b).

The court below recognized that the State may waive its immunity under the Eleventh Amendment when "it leaves the sphere that is exclusively its own and enters into activities subject to congressional regulation." *Parden* v. *Terminal R. Co.*, 377 U. S. 184, 196. In *Parden,* the Court found that Alabama, "when it began operation of an interstate railroad approximately 20 years after enactment of the FELA, necessarily consented to such suit as was authorized by that Act." *Id.*, at 192. But the court below distinguished *Parden* by finding that there was no indication that Congress intended to condition the receipt of federal funds upon the State's submission to liability for violation of the accompanying regulations. Yet even respondents here concede that the State is bound by the federal regulations because the State has accepted federal funds. But, respondents argue, the federal regulations are not mandatory because "[t]he State has the option at any time to ignore the Federal Aid Highway Act and its progeny, the only result being the cessation of Federal Aid."

The fact is, however, that Pennsylvania has not exer-

---

[3] H. R. Rep. No. 681, 89th Cong., 1st Sess. (1965). Although the highway involved here was initially constructed before passage of the Highway Safety Act, petitioners contended in the District Court that under the legislation the State was required to maintain the highway in accordance with the new standards and that it had failed to meet this obligation. This contention, of course, goes to the merits of petitioners' claim and need not be resolved in determining whether the action was properly dismissed.

cised that option. To the contrary, the state legislature has required the Secretary of Highways to enter "into all necessary contracts and agreements with the proper agencies of the government of the United States, and shall do all other things necessary and proper in order to obtain the benefits afforded under . . . [the Federal Aid Highway programs] or any other act of Congress providing Federal aid for highway purposes." Pa. Stat. Ann., Tit. 36, § 670–1004.

"Where a State has consented to join a federal-state cooperative project, it is realistic to conclude that the State has agreed to assume its obligations under that legislation." *Edelman* v. *Jordan,* 415 U. S. 651, 685. (DOUGLAS, J., dissenting). Here the State has made that explicit by its own legislation. It has continued to seek and accept all of the federal funding available to it since the adoption of the statutes and regulations which petitioners here contend the State has violated. It would thus appear that the State is subject to whatever remedies are available when it is contended that a State has not conformed to the federal requirements.

The explicit statutory remedy, noted above, is that the Secretary may terminate federal highway aid under the appropriate legislation. The District Court concluded that since this was the only sanction expressly authorized by the statute, "the Highway Safety Act creates no duty on behalf of the states running toward these plaintiffs and creates no private action for breach thereof." 344 F. Supp., at 1348. The Court of Appeals, affirming, found no private right of action implied by the Act. The court relied on its prior decision in *Mahler* v. *United States,* 306 F. 2d 713, which found that the purpose of the federal regulations was to protect the federal investment in the roads, not to assure travelers that the roads were safely constructed and maintained. But the High-

way Safety Act was enacted subsequent to the *Mahler* decision and, as noted above, it makes clear the federal concern for highway safety. It is well established that a federal statute may by implication create a private action for its violation, maintainable by one in the class of persons for whose protection the statute was enacted. *J. I. Case Co.* v. *Borak,* 377 U. S. 426. And the fact that the statute provides explicitly for administrative action to accomplish its purpose does not alone negate the inference that a private action has also been created, even though the administrative regulation appears comprehensive. *Id.,* at 432–433; *Bivens* v. *Six Unknown Federal Narcotics Agents,* 403 U. S. 388, 402 n. 4 (Harlan, J., concurring). The question is whether "damages are necessary to effectuate the congressional policy underpinning the substantive provisions of the statute." *Bivens, supra,* at 402. The congressional policy involved here was to coerce the States to adopt "coordinated, State action programs of highway safety . . . if one life is saved, the establishment of coordinated action programs will be a success." [4]

By voluntarily entering into the federal highway program the State has waived any immunity from suit charging it with failure to perform its obligations under that program. See my dissent in *Edelman* v. *Jordan, supra.* Because I believe that the right of private action under the federal highway program is an important question, and that the Eleventh Amendment issue was wrongly decided below, I would grant certiorari.

---

[4] H. R. Rep. No. 681, *supra,* n. 3, at 8.