Jeffrey SMITH, et al.

v.

Richard Dennis BERNIER, Jr., et al. (Two Cases).

Civ. Nos. PN–87–2321, PN–87–2322.

United States District Court,
D. Maryland.

Oct. 27, 1988.

Robert S. Gordon, Rockville, Md., for plaintiffs.

James R. Eyler, and Carol A. O'Day, Miles & Stockbridge, Baltimore, Md., and Alfred L. Scanlan, Jr., William G. Ohlhausen, David A. Rosenberg, and Levan, Schimel, Richman & Belman, P.A., Columbia, Md., for defendants Mattingly Const., Inc. and Sheila S. Mattingly, individually and trading as Mattingly Builders.

J. Joseph Curran, Jr., Atty. Gen. of Md., and Lawrence H. Norton and Carolyn Quattrocki, Asst. Attys. Gen. of Md., for defendants Wayne Clingan, Gene Straub, Wayne Bittinger and the State of Md.

## OPINION

NIEMEYER, District Judge.

On the evening of September 25, 1984, William and Rose Smith, who were proceeding westward on Interstate Route I–70

in Frederick County, Maryland, collided with a dump truck which entered the highway from a crossover. They died as the result of their injuries. The truck was operated by Richard Bernier who was working as part of a construction effort involved in the paving of the highway.

Bernier was an employee of a trucking subcontractor of defendant Mattingly Construction Co. Mattingly was under contract with the Maryland State Highway Administration to conduct the paving operation on that portion of the highway at the time of the accident. Bernier was transporting materials to the paving operation when the accident occurred.

The Smiths' three sons brought suit for wrongful death and the Smiths' estate brought suit for the surviving negligence claim. They sued Bernier and his employer; Mattingly, the general contractor; and the State of Maryland and three of its officials who were involved in the repaving project. They filed an identical action in state court which is pending. In this action, Mattingly also filed a crossclaim against the state and its officials for indemnity or contribution if Mattingly is found responsible.

The claims of negligence against the State of Maryland and its officials are based on allegations that the state did not provide adequate lights, warning signs, cautionary instructions to trucks, and a "channelization device" for truck travel. The claims also allege that these defendants were negligent in their hiring Mattingly and that they are responsible for the acts of negligence of the other defendants under the doctrine of respondent superior. In response to a claim of immunity asserted by the state under the Eleventh Amendment to the Constitution, the plaintiffs allege additionally that the acts of negligence were wanton, callous and reckless and that therefore, in wrongfully causing the death of the Smiths, these defendants deprived the plaintiffs of life, liberty and property without due process of law and deprived plaintiffs of equal protection. Plaintiffs urge that these allegations properly state a claim under 42 U.S.C. § 1983.

The State of Maryland and its three highway administration officials who are named defendants have moved to dismiss the complaint. They also have moved to dismiss the crossclaim of Mattingly.

I.

As part of their negligence claims, plaintiffs allege that the state defendants, by failing to maintain adequate lighting, warning signs, and traffic control devices at the site of the accident, are liable to them for violation of various highway standards as set forth in the Manual on Uniform Traffic Control Devices (MUTCD), adopted at 23 C.F.R. §§ 655.601 and 655.603, which are promulgated under the Federal–Aid Highway Act, 23 U.S.C. § 101 *et seq.*, and the Highway Safety Act, 23 U.S.C. § 401 *et seq.* The state defendants contend that these statutes and their accompanying regulations do not create a private cause of action for injuries resulting from their violation.

At least two courts have considered whether the federal highway statutes create an implied private cause of action. In *Miller v. United States*, 710 F.2d 656 (10th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983), the court reviewed the principles of *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), to determine whether the Highway Safety Act creates an implied cause of action. In a well-reasoned opinion, the court considered not only the language of the relevant statutes and regulations but also their purpose and relevant legislative intent, and concluded that the Act did not create an implied private cause of action. *Id.* at 668.

The same analysis leads to the conclusion that the Federal–Aid Highway Act does not create a private cause of action. In *Morris v. United States*, 585 F.Supp. 1543 (W.D.Mo.1984), the court concluded that *Miller* and authorities cited therein "establish that neither the Federal–Aid Highway Act nor the Highway Safety Act create an implied private cause of action to recover damages for personal damages for personal injuries sustained as a result of an

alleged violation of any standard set forth therein or in any regulation promulgated pursuant to either Act." *Id.* at 1548.

The Court is persuaded by the reasoning of these authorities and accordingly concludes that a private cause of action is not created under these statutes and the regulations promulgated under them.

## II.

Plaintiffs' negligence claims against the state defendants, whether for violation of highway standards or common law negligence, are brought under the Maryland Tort Claims Act, State Gov't. Art., § 12–101 *et seq.*, Md.Code (1987 Supp.).* The complaint alleges that the state officials, acting at all relevant times in their official capacities as engineers of the State Highway Administration, negligently failed to require adequate lighting, warning, and traffic control devices at the accident site and negligently hired and entrusted their responsibilities to Mattingly, the construction contractor.

Defendants contend that all of these claims are barred by the Eleventh Amendment and that the state has waived its Eleventh Amendment immunity only as to suits brought in *state* court under the Maryland Tort Claims Act.

The Eleventh Amendment provides:

The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

■ The Eleventh Amendment bars a suit for damages against a state in federal court, unless the state has waived its immunity or Congress has overridden the immunity. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). This bar extends to state officials who are sued, as in this case, for damages in their official capacity. *Kentucky v. Graham,* 473 U.S.

159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985).

■ Moreover, the Supreme Court "consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst,* 465 U.S. at 99 n. 9, 104 S.Ct. at 907 n. 9. As such, "a state statutory or constitutional provision will constitute a waiver of Eleventh Amendment immunity only if it contains an 'unequivocal' statement of the state's intention to subject itself to suit *in federal court."* *Westinghouse Electric Corp. v. West Virginia Dept. of Highways,* 845 F.2d 468, 470 (4th Cir.) (emphasis in original) (citing *Atascardero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985)), *cert. denied,* — U.S. ——, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). A review of Maryland's statutes indicates that the state has not consented expressly to suits in federal court based on common law tort liability. In fact, the statutes clearly limit the state's waiver of immunity solely to actions brought in the Maryland state courts. For example, the Maryland Tort Claims Act in effect at the time of the accident stated that "[n]othing in this subtitle is intended to waive any right of or defense available to the State or any agency, official, or employee of the State *in any action in the courts of the United States* or the courts of any of Maryland's sister states, including, but not limited to, the defenses available under the Eleventh Amendment to the Constitution of the United States." Courts and Jud.Proc. Art., § 5–402(c), Md.Code (section in effect at time of accident) (emphasis added); *see also* State Gov't. Art., § 12–104, Md.Code (version presently in effect) ("the immunity of the State and of its units is waived as to a tort action, *in a court of the State,* to the extent of insurance coverage ...").

Plaintiffs have not directed the Court's attention to any waiver by the State of Maryland of its Eleventh Amendment im-

---

* The version in effect at the time of the accident was set forth at Courts and Jud.Proc. Art., § 5–101 *et seq.,* Md.Code. The Court will cite to

that version of the statute unless noted otherwise.

munity from actions for damages against it or its agents in federal court, nor have plaintiffs noted any act of Congress that has overridden the state's immunity. The acceptance and receipt by the state of federal highway funds does not operate as an implied waiver of the state's Eleventh Amendment immunity to negligence actions for damages in federal court. *See Lumbermen's Mutual Casualty Co. v. Fugate,* 569 F.2d 213, 214 (4th Cir.1978) (Virginia did not waive immunity by receiving and disbursing federal highway funds; "mere participation in a federal program does not establish consent on the part of a state to be sued in the federal courts"); *see also Daye v. Commonwealth of Pennsylvania,* 483 F.2d 294, 298 (3d Cir.1973), *cert. denied,* 416 U.S. 946, 94 S.Ct. 1956, 40 L.Ed.2d 298 (1974) ("[w]e do not find such a waiver merely because Pennsylvania receives federal highway funds.").

Plaintiffs cite *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), *Mayor and City Council of Baltimore v. Seidel,* 44 Md.App. 465, 409 A.2d 747 (Md.App.1980), and other similar cases to argue that the state and its officials are not immune from suit when they are engaged in operational or proprietary functions. Defendants correctly note, however, that any cases involving this distinction between proprietary and governmental functions are irrelevant in this case, because they relate to the extent of a municipality's liability from suit.

The plaintiffs also urge that the Maryland legislature's mandate that the state carry liability insurance is an indication that the state has waived its immunity to the extent of its insurance. Similarly they argue that the state has waived its immunity by agreeing with its insurance carrier not to raise governmental immunity as a defense. The Court does not find that either of these points demonstrates an unequivocal intent on the part of the state to waive its immunity to suit in the federal court.

In *Westinghouse Electric Corp. v. West Virginia Dept. of Highways,* 845 F.2d 468 (4th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988), the Fourth Circuit considered and rejected similar arguments. The West Virginia Department of Highways was sued by Westinghouse for negligently marking a portion of a highway on which an accident occurred. In response to a claim of immunity by the state, Westinghouse argued that a waiver of the state's Eleventh Amendment immunity could be implied to the extent the state was insured against the loss from a claim, on the ground that a fundamental purpose of the immunity doctrine is to protect the state treasury. Rejecting that argument, the court concluded that this theory did not fall within the narrow scope of *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), which requires that a state's intention to waive its immunity be "unequivocal."

Westinghouse also contended in that case that West Virginia had waived its immunity through state statutes that required that (1) all state insurance contracts contain a provision by which the insurer agreed not to raise "constitutional immunity" of the insured as a defense to third-party claims and (2) all such contracts contain a provision by which the insurer agreed not to assert the insured's governmental status as a defense to third-party claims. Again the Fourth Circuit dismissed the argument at least for suits in the federal courts:

> These provisions can, at most, be construed as waiving the state's immunity from suit in *state* court. Neither contains the "unequivocal" statement of the state's intention to subject itself to suit in *federal* court required by *Atascadero,* even assuming the legislature had the power under state law to do so.

*Id.* at 471 (emphasis in original).

The *Westinghouse* decision is controlling here. Neither Maryland's statutes requiring liability insurance nor the policies themselves indicate an unequivocal intention on the part of Maryland to waive its Eleventh Amendment immunity and such a waiver will not be inferred with respect to the claims in this Court.

## III.

Finally, plaintiffs allege that the conduct of the three state officials named as defendants in hiring and supervising a state contractor and in failing to utilize adequate lighting, warning, and traffic control devices at the accident site constituted negligence, gross negligence, and recklessness in violation of the Smiths' constitutional rights. Plaintiffs allege that defendants' actions deprived the Smiths of their lives without due process of law and their right to equal protection under the law. They bring their suit under 42 U.S.C. § 1983.

Plaintiffs' original complaint alleged mere negligence on the part of the state officials. As such, that complaint failed to state a claim under 42 U.S.C. § 1983 because "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss or injury to life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). The Supreme Court in *Daniels* expressly left open the question whether something less than intentional conduct, such as recklessness or gross negligence, is enough to trigger the protections of the Due Process Clause. *Id.* at 334 n. 3, 106 S.Ct. at 667 n. 3.

Presumably in recognition of this shortcoming to their complaint, plaintiffs amended their complaint to add allegations that the defendants acted with gross negligence and recklessness in violating the Smiths' rights to due process. They added no new factual allegations. Although the conclusory allegations added by the amended complaint are therefore suspect, for purposes of this motion to dismiss, this court will focus on the amended complaint in determining whether the acts surrounding this automobile accident rise to the level of a constitutional violation.

▮ Procedural due process generally requires "some kind of a hearing" before the state deliberately deprives an individual of life, liberty, or property. *See McClary v. O'Hare,* 786 F.2d 83, 87 (2d Cir.1986); *see also* Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267 (1975). It is difficult to understand what type of pre-deprivation

process the plaintiffs allege was due to the Smiths prior to the accident in this case. As the Second Circuit noted in *McClary v. O'Hare, supra,* where wrongful death of a county employee was alleged:

> Appellant does not claim that any *procedures* the State could have followed would have made the accidental, even if recklessly caused, deprivation of her husband's life proper. Appellant complains that state actors caused her husband's death, not that in doing so they failed somehow to apply the proper procedures. Procedural due process is simply not implicated in this case at all. (Emphasis in original). 786 F.2d at 87.

The Second Circuit also considered whether there was an adequate post-deprivation remedy available. Rejecting the plaintiff's attack on the adequacy of available Workers' Compensation remedies, the court dismissed all procedural due process claims.

▮ The reasoning of *McClary* is persuasive. The plaintiffs in this case have not, and cannot, allege that defendants failed to follow any proper procedures to ensure that the taking of the Smiths' lives would be fair. In the context of an automobile accident, such an analysis is nonsensical. If post-deprivation process is the issue, it is put to rest by the clearly available procedure in state courts under the Maryland Tort Claims Act.

▮ Any claim by the plaintiffs that the Smiths were denied substantive due process will also be rejected. The doctrine of substantive due process protects the individual against certain government actions regardless of the fairness of the procedures used to implement them. *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). The purpose of the doctrine of substantive due process is to "prevent governmental power from being 'used for purposes of oppression.'" *Id.* (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 277, 15 L.Ed. 372 (1856)); *see Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (government conduct of pumping stomach of suspected

drug dealer "shocks the conscience" and violates due process clause).

 *Rochin, supra*, identifies the traditional standard for determining whether a substantive due process violation occurred by asking whether the conduct "shocks the conscience." *Id.* at 172, 72 S.Ct. at 209. It is clear that substantive due process violations must be more serious than mere violations of state tort law. *Gilmere v. City of Atlanta, Georgia*, 774 F.2d 1495, 1500 (11th Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). "Our Constitution deals with the large concerns of the government and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels*, 474 U.S. at 332, 106 S.Ct. at 665.

> As the Second Circuit noted in *McClary*, Much of the case law on substantive due process was developed with this notion implicit, if not expressed ... [M]any of the case permitting recovery on a substantive due process ground for personal injury or death involve a person in state custody or under the state's control. Such persons are clearly subject to abuses of the government's significant power over them. By contrast, where a member of the public is harmed as a result of a governmental official's failure to act, a constitutional violation is not generally found ... unless the government conduct is "sufficiently severe, sufficiently disproportionate to the need presented and so deliberate and unjustified a use of [authority] as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."

786 F.2d at 88 (quoting *Shillingford v. Holmes*, 634 F.2d 263, 266 (5th Cir.1981)).

 Applying these principles to the present complaint, it is plain that plaintiffs have not alleged facts even approaching those that have been found to be sufficiently egregious to shock the judicial conscience. While the accident that is the subject of this suit is tragic, the conduct of the state or its employees, even if true as alleged, does not rise to the level of a constitutional deprivation of due process.

 Plaintiffs' claim for violation of their right to equal protection under the laws arising out of an automobile accident borders on the frivolous. The right to equal protection under the laws guaranteed by the Fourteenth Amendment limits a state's power to make certain classifications. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). Plaintiffs allege no classifications whatsoever in their complaint and make no claim of disparate treatment of any classifications of themselves or any other persons. Defendants argue in their brief that "plaintiffs have failed even to state the barest bones of an equal protection claim". The Court agrees.

For all of the foregoing reasons, therefore, the court will grant the motion of the state defendants to dismiss the amended complaint as well as the motion to dismiss Mattingly's crossclaims. A separate order has been entered giving effect to this opinion.