Sharon TEMKIN; Bruce M. Temkin, Plaintiffs–Appellants,

v.

FREDERICK COUNTY COMMISSIONERS; Glen Marion Selby, Jr., Defendants–Appellees.

No. 90–1070.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1991.

Decided Sept. 12, 1991.

Philip Bogart Allen, Coale, Kananack & Murgatroyd, Los Angeles, Cal., argued (John P. Coale, on brief), for plaintiffs-appellants.

John Michael Quinn, Quinn & McAuliffe, Rockville, Md., argued (Michael J. McAuliffe, on brief), for defendants-appellees.

Before PHILLIPS, MURNAGHAN, and SPROUSE, Circuit Judges.

## OPINION

MURNAGHAN, Circuit Judge:

Appellant Sharon Temkin was severely injured when the car she was driving was struck by the vehicles of a fleeing misdemeanant and the police officer pursuing him. Temkin and her husband (the Temkins) subsequently brought an action pursuant to 42 U.S.C. § 1983 in the United States District Court for the District of Maryland, against both the driver of the police car, appellee Deputy Sheriff Glen Selby (Selby), and the appellee Frederick County Commissioners (the Commissioners).[1] The complaint also alleged pendent state claims for negligent operation of a motor vehicle, negligent supervision, and loss of consortium.

After considerable. discovery, the County moved for summary judgment on the section 1983 counts. The Temkins filed an affidavit in opposition to the summary judgment motion pursuant to Federal Rule of Civil Procedure 56(f), claiming that summary judgment would be inappropriate un-

---

**1.** Selby and the Commissioners shall be collectively referred to as "the County" except where clarity necessitates a reference to each individually.

til the Temkins had conducted further discovery. Nevertheless, the district court granted the County's motion and entered summary judgment in their favor on the section 1983 counts, then dismissed the state claims, declining to retain pendent jurisdiction over them.

The Temkins then moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) together with an extension of time within which to file a memorandum in support of the motion to alter or amend. The district court denied both motions. The Temkins appeal from both the entry of summary judgment in the County's favor and from the denial of their motion to alter or amend the judgment.

## I.

The facts, taken in the light most favorable to the Temkins, are as follows. At approximately 10:00 p.m. on July 14, 1987, Selby, a Frederick County Deputy Sheriff, observed a car spinning its wheels as it left a Texaco gas station on Route 85 in Frederick County. Selby gave chase with his lights and siren activated. Both cars proceeded along Maryland Route 355 at a high rate of speed. While the chase was in progress, an attendant at the Texaco gas station called 911 to report that approximately $17.00 worth of gas had been stolen. The information was relayed to Selby over his radio.

Both vehicles continued along Route 355 at speeds ranging from 65 to 105 miles per hour. Route 355 is a narrow, two-lane highway traversing an area of varying population. At the time of the chase, a carnival was taking place in the area and cars were parked along both sides of the road. At some point, the pursued vehicle failed to navigate a curve in the road, lost control, crossed over the double yellow line, and struck the car in which Sharon Temkin was driving, causing it to spin in a clockwise direction. Selby immediately "stood on the brakes" in an attempt to stop, which resulted in Selby's car skidding out of control, crossing the double yellow line, and hitting Temkin's car broadside on the driver's side. At the moment of impact, Selby's vehicle was traveling at approximately 60 miles per hour. As a result of the collision with Selby's cruiser, Temkin suffered severe and permanent injuries.

At the time the chase took place, the Frederick County Sheriff's Department had in force General Order # 204, which governed the conduct of officers engaged in pursuits. The order required the "onduty supervisor" to monitor all pursuits and granted him the authority to halt any pursuit "if warranted." At the time the chase began, the onduty supervisor was responding to another call. He could not monitor Selby's pursuit because his own radio was inoperative; although he could have monitored the pursuit from the car of the officer accompanying him, he chose not to do so.

On appeal, the Temkins have urged that neither Selby nor the Commissioners were entitled to judgment as a matter of law, and that the district court's entry was premature in light of the Temkins' Rule 56(f) affidavit opposing summary judgment on the ground that further discovery was necessary.

## II.

We review a district court's grant of summary judgment *de novo*, employing the same standards applied by the district court. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1127–28 (4th Cir.1987). With Federal Rule of Civil Procedure 56 as our guidepost, we will affirm a grant of summary judgment if, after reviewing the pleadings, depositions, interrogatories, and affidavits, we are satisfied that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). The party moving for summary judgment bears the initial burden of pointing to the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Higgins v. Scherr*, 837 F.2d 155, 157 (4th Cir.1988). The burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of

fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987). Summary judgment may only be entered after "adequate time for discovery." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

Turning first to the question of whether Selby was entitled to judgment as a matter of law,[2] Temkin's assertion of error on the point focuses upon the standard of care applied by the district court in determining whether a section 1983 constitutional deprivation on the basis of the "substantive due process" aspects of the Fourteenth Amendment was made out.

■ The district court below adopted the standard of care set out in *Smith v. Bernier*, 701 F.Supp. 1171 (D.Md.1988), in which then district Judge Niemeyer wrote that a section 1983 claim alleging a violation of substantive due process can be made out only when the conduct alleged "shock[s] the judicial conscience," *id.* at 1177, language taken directly from the Supreme Court's opinion in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The Temkins have asserted that the district court erred in adopting the "shocks the conscience" standard. We disagree.

It is axiomatic that "in any § 1983 action the initial inquiry must focus on whether the two essential elements of a § 1983 action are present: (1) whether the conduct complained of was committed by a person

acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

When the constitutional deprivation concerns governmental misconduct implicating the guarantees of life, liberty, and property under the Due Process Clause of the Fourteenth Amendment, additional elements come into play. In *Daniels v. Williams*, 474 U.S. 327, 334, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986), the Supreme Court held that such a deprivation must flow from conduct amounting to more than mere negligence, but reserved the question as to what types of conduct short of intentional acts rose to the level of a constitutional deprivation. *Id.* at 334 n. 3, 106 S.Ct. at 666 n. 3. *Daniels* overruled that part of *Parratt v. Taylor* which had suggested that mere negligence was sufficient to make out a claim under section 1983 and the Due Process Clause. The part of *Parratt* that survived *Daniels*, however, continues to set forth an additional consideration: where a claim is made alleging negligent deprivation of property, and where an adequate post-deprivation remedy exists in state law, the requirements of due process are satisfied. *Parratt*, 451 U.S. at 544, 101 S.Ct. at 1917.

The *Parratt* Court defined "adequacy" by balancing the costs associated with im-

---

**2.** The Temkins have argued in passing that the district court usurped the role of the fact-finder by making, on a summary judgment motion, credibility determinations, by weighing evidence, and by drawing inferences from the facts in a light unfavorable to the non-moving party, with the result of accepting the County's testimony at face value. *See, e.g., Paroline v. Unisys Corp.*, 879 F.2d 100, 109 (4th Cir.1989), *vacated in part*, 900 F.2d 27 (4th Cir.1990) (where conflict in inferences to be drawn from a given set of facts exists, summary judgment is inappropriate). Here the Temkins seem to have argued that there existed genuine issues of material fact standing in the way of summary judgment, but they have failed utterly to discuss in their brief what any of those disputed facts are. Our only recourse, then, is to review the record *de novo*, mindful that

[t]he facts and inferences to be drawn from the facts must be viewed in the light most favorable to the non moving party, and [that] this party is entitled "to have the credibility of [their] evidence as forecast assumed, [their] version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to [them]."
*Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)). As we shall discuss further, *infra*, the only "fact" over which there may exist a dispute was testimony by one of the Temkins' experts to the effect that Selby's conduct during the chase rose to the level of recklessness. Yet under the applicable standard of care, such a "fact" would not be "material."

posing additional procedural safeguards as a constitutional requirement against the probability that the safeguards would reduce significantly the abuse of official power at issue. *Id.* at 542–43, 101 S.Ct. at 1916–17 (*citing Ingraham v. Wright,* 430 U.S. 651, 682, 97 S.Ct. 1401, 1418, 51 L.Ed.2d 711 (1977)).

Because *Parratt* concerned only conduct characterized as "mere negligence," one troubling question its holding left unanswered was whether the Court had concluded that due process analysis of any official misconduct resulting in a deprivation, no matter what the character of the conduct, was henceforth to be effected in a "strictly procedural" context. Justice Powell in particular was concerned that the majority's analysis had "avoid[ed] entirely the question of whether the Due Process Clause may place substantive limitations on this form of governmental conduct." *Id.* at 553, 101 S.Ct. at 1922 (Powell, J., concurring).

Such concerns appear to have been substantially alleviated in *Daniels.* Indeed, a fair reading of *Daniels* and its companion case, *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), renders as highly doubtful the position that *Parratt* can be read so broadly as to hold that even intentional or malicious abuses of governmental power do not rise to the level of a violation of due process so long as some adequate state post-deprivation remedy exists. Indeed, the Court later noted there, after citing a long line of cases which "reflects the traditional and common-sense notion that the Due Process

Clause, like its forbear in the Magna Carta, was 'intended to secure the individual from the arbitrary exercise of the powers of government,'" *id.* at 331, 106 S.Ct. at 665 (citations omitted), that "by barring certain government actions regardless of the fairness of the procedures used to implement them, [the Due Process Clause] serves to prevent governmental power from being 'used for purposes of oppression.'" 474 U.S. 327, 331–32, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (citations omitted). Stated another way, some abuses of governmental power may be so egregious or outrageous that no state post-deprivation remedy can adequately serve to preserve a person's constitutional guarantees of freedom from such conduct. Thus, conduct which "shocks the conscience," *Rochin,* 342 U.S. at 172, 72 S.Ct. at 209, or conduct which "amount[s] to a brutal and inhumane abuse of official power literally shocking to the conscience," *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980), violates the substantive guarantees of the Due Process Clause independent of the absence or presence of post-deprivation remedies available through state tort law. *See Daniels,* 474 U.S. at 338, 106 S.Ct. at 678 (Stevens, J., concurring).[3]

Thus, the question squarely before us is whether Deputy Selby's or the Commissioners' conduct in the instant case so shocks the conscience as to constitute an abuse of governmental power violative of Sharon Temkin's constitutional liberty interests despite the existence of state tort laws under which that conduct is otherwise clearly actionable.[4]

---

**3.** Such a rule of law forms one of two branches of the reemergence of substantive due process. The branch at issue here is to be distinguished from a line of cases forming the branch described by Justice Harlan in *Poe v. Ullman,* in which he noted,

> Were due process merely a procedural safeguard it would fail to reach those situations where the deprivation of life, liberty or property was *accomplished by legislation* which by operating in the future could, given even the fairest possible procedure in application to individuals nevertheless destroy the enjoyment of all three.

367 U.S. 497, 541, 81 S.Ct. 1752, 1775, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting) (emphasis

added). *See, e.g., Michael H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989).

**4.** As Justice Stevens suggested in his concurring opinion in *Daniels,* any section 1983 claimant not raising a claim under another fundamental right incorporated through the Fourteenth Amendment, or under the theory of substantive due process set out in *Rochin,* may only attack the adequacy of the procedure at issue. 474 U.S. at 337–39, 106 S.Ct. at 677–79 (Stevens, J., concurring). Notably, the Temkins have not asserted that the state process is inadequate. Indeed, they timely filed a state action against the County in a Maryland court, trial having been held in abeyance pending resolution of the

Although the jurisprudence of the Fourth Circuit has not heretofore, in definitive fashion, adopted the "shocks the conscience" standard, we have, in addition to *Tawney*, embraced that formulation of the standard in another context. In *Weller v. Department of Social Servs.*, 901 F.2d 387 (4th Cir.1990), a father had brought a section 1983 action against an agency which had removed his son from the parental home. Judge Chapman wrote that the father had failed to make out a substantive due process claim because, in part, "[i]t does not shock the conscience to hear that defendants removed a child in emergency action from the custody of a parent suspected of abusing him, based upon some evidence of child abuse." *Id.* at 391 (footnote omitted).

By way of comparison, in *Martin v. Gentile*, 849 F.2d 863 (4th Cir.1988), we examined the substantive due process claim of a pretrial detainee by noting that

> a pretrial detainee makes out a due process violation if he shows "deliberate indifference to serious medical needs."

*Id.* at 871 (*quoting Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). While the Temkins might urge that we should adopt the "deliberate indifference" standard, the examination of the standard of care owed in the context of incarceration is of limited value for our purposes here. In *Smith v. Bernier*, Judge Niemeyer pointed out that

> "many of the case[s] permitting recovery on a substantive due process ground for personal injury or death involve a person in state custody or under the state's control. Such persons are clearly subject to abuses of the government's significant power over them. By contrast, where a member of the public is harmed as a result of a governmental official's failure to act, a constitutional violation is not generally found ... unless the govern-

ment conduct is 'sufficiently severe, sufficiently disproportionate to the need presented and so deliberate and unjustified a use of [authority] as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights.'"

701 F.Supp. at 1177 (*quoting McClary v. O'Hare*, 786 F.2d 83, 88 (2d Cir.1986) (citation omitted)). Indeed, the district court below relied on the *McClary* language in adopting the "shocks the conscience" standard, reasoning we find entirely consistent with our analysis of *Parratt* and *Daniels*.

A review of rulings by other circuits which have examined the substantive due process issue in the context of police driving misconduct only leaves us further convinced of the correctness of the "shocks the conscience" standard. In *Roach v. City of Fredericktown*, 882 F.2d 294 (8th Cir.1989), plaintiffs who had been seriously injured when their car was struck by both a fleeing suspect's car and the pursuing policeman's car brought a section 1983 claim against the policeman and the city, claiming that the policeman's actions "shocked the conscience." The district court dismissed the action for failure to state a claim. On appeal, the Eighth Circuit ruled that negligent or "grossly negligent" conduct did not state a claim under section 1983 and that the policeman's conduct, not rising to the level of "gross negligence," "most certainly [did] not rise to the level of conduct which would sustain a claim under section 1983." *Id.* at 297.

The Eleventh Circuit came to a similar conclusion in *Cannon v. Taylor*, 782 F.2d 947 (11th Cir.1986). There a police officer, responding to an emergency call, drove his vehicle within the city limits of Columbus, Georgia at 46 miles per hour in a 30-mile-per-hour zone. Georgia law permitted police vehicles to exceed posted speed limits when responding to emergency calls, but only if the officer used the vehicle's flash-

---

instant case in its assertion of section 1983 claims. Assuming, *arguendo*, that Justice Stevens' view is not the current posture of a majority of the Court, and some fourth possibility exists in which no state remedy is available, but a substantive due process claim may still be made out on the basis of a deprivation caused

by conduct greater than merely negligent, such as "gross negligence" or recklessness, we need not today concern ourselves with such a possibility, because in the presence of a colorable state remedy, Temkin's only available cause of action lies along the line of cases comprising, *inter alia*, *Rochin* and *Tawney*.

ing lights and siren. The defendant in *Taylor* was using neither, and struck the left side of the plaintiff's automobile as she was driving through an intersection. Nevertheless, the Eleventh Circuit held that

> a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for violation of a federal right.

*Id.* at 950. The *Taylor* court's reasoning is particularly persuasive because of its citation to two Supreme Court cases, one of which we have already discussed at length, which held, albeit in *dicta*, that a finding of section 1983 liability for persons involved in nothing more than an automobile accident with a state official would render the Fourteenth Amendment "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *see also Parratt*, 451 U.S. at 544, 101 S.Ct. at 1917.

Although the Sixth Circuit adopted a standard perhaps slightly less stringent— "gross negligence and outrageous conduct"—in *Jones v. Sherrill*, 827 F.2d 1102 (6th Cir.1987), the district court's dismissal of a section 1983 claim brought by a plaintiff whose husband had been killed when his automobile collided with a car which had crossed the centerline in a high-speed police chase was affirmed. In her complaint, the plaintiff alleged that in the course of the pursuit, the vehicles were driven at speeds of 120–125 miles per hour in traffic and within the city limits, that the chasing police cars were following in a manner too close for safety, that the police chief was in radio contact with the officers and was following them in his own vehicle, and that as a result of the "grossly negligent" pursuit, the fleeing driver's car crossed the centerline and collided with the plaintiff's husband's car, killing him.

The *Sherrill* court defined "gross negligence" in a section 1983 context by stating that

> "a person may be said to act in such a way as to trigger a section 1983 claim if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow;"

*id.* at 1106 (*quoting Nishiyama v. Dickson County*, 814 F.2d 277, 282 (6th Cir.1987) (en banc); adding that

> [t]he facts alleged in support of the legal conclusion of gross negligence must be sufficient to charge the government officials with *outrageous conduct or arbitrary use of government power.*

*Id.* (emphasis added). Finding the facts (facts quite similar to those presented here) not to meet such a standard, the Sixth Circuit affirmed dismissal.

Finally, in *Walton v. Salter*, 547 F.2d 824 (1976), the Fifth Circuit affirmed the dismissal of a section 1983 complaint brought by a widow whose husband had been struck by a police car responding to an armed robbery. The court held that an isolated act of negligence, even if willful and wanton, failed to state a section 1983 claim. *Id.* at 825.

As all of the parties, and the district court as well, point out, our sister circuits have adopted standards of care ranging from "gross negligence" to "deliberate indifference" to "recklessness" for section 1983 substantive due process claims involving conduct other than the driving of official vehicles. *See e.g., Landol–Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir. 1990) (officers' decision to shoot toward hijacked vehicle did not demonstrate reckless or callous indifference); *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) (impounded vehicle passenger's allegations that state trooper acted with deliberate indifference to passenger's interest in personal safety by leaving passenger by the side of the road at night in high-crime area, resulting in passenger's accepting ride with stranger and being raped, stated claim under section 1983); *Archie v. City of Racine*, 847 F.2d

1211, 1219 (7th Cir.1988) (*en banc*), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989) (fire department dispatcher's refusal to send rescue squad after two requests by telephone was not reckless in the constitutional sense so as to support a section 1983 action); *Harris v. Maynard*, 843 F.2d 414, 416 (10th Cir.1988) (wanton or obdurate disregard of, or deliberate indifference to, prisoner's right to life as a condition of confinement is a substantive constitutional deprivation under the Fourteenth Amendment); *Morales v. Department of Corrections*, 842 F.2d 27, 30 (2d Cir.1988) (inmate's allegation that corrections officer on duty in dormitory stood by and allowed attack on inmate by fellow inmate to occur was sufficient to state federal rights claim for deliberate indifference under due process clause); *Metzger v. Osbeck*, 841 F.2d 518, 520 n. 1 (3d Cir.1988) (finding that school teacher's conduct in disciplining student amounted to reckless indifference or gross negligence would be sufficient to support section 1983 claim); *Taylor v. Ledbetter*, 818 F.2d 791, 797 (11th Cir.1987) (*en banc*), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989) (child involuntarily placed in foster home may bring section 1983 action for violation of Fourteenth Amendment rights arising out of state officials' deliberate indifference to welfare of child in placing child in foster home); *Lopez v. Houston Indep. School Dist.*, 817 F.2d 351, 355 (5th Cir.1987) (supervisors of school bus driver were not grossly negligent or deliberately indifferent to constitutional rights of students riding bus and were thus not liable under section 1983).

In the abstract, the weight of such authority might counsel for our own adoption of some similar standard. Yet, when the "chase cases" involving the police—*Roach, Taylor, Sherrill,* and *Walton*—are considered together with the "shock the conscience standard" derived from *Rochin, Parratt,* and *Daniels* and alluded to if not indeed embraced in two Fourth Circuit opinions,

*Weller* and *Tawney*, and are considered in light of the "stricter standard" rationale discussed in *McClary*, we can only conclude that the standard of care applicable to the instant facts is the "shocks the conscience" standard.[5]

Turning to the instant facts, and reserving for the moment consideration of any additional facts which may have developed had further discovery been permitted; *see* part III, *infra;* the Temkins have called our attention to five specific facts which they have contended would demonstrate that Selby's conduct was violative of the applicable standard of care: 1) the chase continued for a significant period of time over a ten mile area; 2) the chase continued at a very high rate of speed; 3) the chase was initiated because of a minor violation; 4) the police already had, at a minimum, a partial identification of the license plate of the suspect vehicle; and 5) the chase violated General Order # 204 because Selby failed to maintain radio contact with his supervisor throughout. To those five facts we would add the expert deposition testimony of Dr. Geoffrey Alpert that Selby's conduct was "reckless," "totally irresponsible," and "wanton."[6]

■ With the exception of the fact that the instant chase took place at night, the facts here are almost indistinguishable from those found in *Roach, Taylor, Sherrill,* and *Walton.* Indeed, some of the facts in those four cases involved conduct more egregious than that present here. We are thus of the opinion that Selby's conduct, while disturbing and lacking in judgment, falls short of the "shocks the conscience" standard we adopt today. The district court properly held that Selby's conduct did not rise to the level of a violation of substantive due process cognizable under a section 1983 claim.

■ As to the Frederick County Commissioners, count two of the Temkins' complaint alleges that the Commissioners had failed to adopt adequate policies governing

---

5. In so holding, we do not today address the question of whether the same standard applies in those cases, such as incarceration or involuntary foster care, where governmental control over the claimant is intentional and direct. *See,*

*e.g., Martin,* 849 F.2d at 871; *Ledbetter,* 818 F.2d at 797.

6. No mention is made of Dr. Alpert's testimony in the district court's memorandum opinion.

the training and supervision of officers engaged in high-speed pursuits. Such failure, the complaint continues, "made it inevitable that life-threatening collisions would occur, and amounted to a deliberate indifference to the rights of those using the public highways." In addition, the complaint avers that "[o]ther highspeed chases have been undertaken by deputies of the Frederick County Sheriff's Department with such frequency and with such little provocation that it can be fairly concluded that the Defendant Commissioners have a custom and practice of encouraging such chases for the sake of apprehending suspects, however minor the violation, at the expense of the safety and well-being of the innocent public." The Temkins have now contended on appeal that the district court erred in entering summary judgment in favor of the Commissioners.

We need not linger long on the point. A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised. *Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir.1990); *Roach*, 882 F.2d at 298. Because of a lack of section 1983 liability on Selby's part, the entry of summary judgment in the Commissioners' favor was proper.

### III.

The Temkins have raised as a final point of error the district court's entry of summary judgment in the County's favor even in light of an affidavit filed in opposition to summary judgment pursuant to Federal Rule of Civil Procedure 56(f), urging that further discovery was required and that such discovery would present genuine issues of material fact rendering summary judgment inappropriate. Specifically, the affidavit averred that

> Plaintiffs desire to take the depositions of one of the Frederick County Commissioners and of Lt. Gary Wood of the Frederick County Sheriffs Department. The deposition of the Frederick County Commissioner will establish that Frederick County owned the police vehicle in question (although this has been admitted in answers to interrogatories[ ) ].

The deposition will further establish that the Frederick County Commissioners had no policy regarding police pursuits and that the Frederick County Commissioners, in fact, abrogated that responsibility completely. Finally, the deposition will establish facts relating to the relationship between the Commissioners and the Sheriffs Department.

The deposition of Lt. Gary Wood, who was the training officer for the Frederick County Sheriffs Department, will establish the absence of training by the Frederick County Sheriffs Department in the procedures under General Order #204.

The document is undated and does not appear on the district court's docket sheet, but it is apparent from the face of the affidavit that it was filed before the court granted the County's motion for summary judgment.

After the entry of summary judgment, the Temkins filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). That motion was denied. Presumably, the motion had been filed to permit the discovery alluded to in the Rule 56(f) affidavit to go forward, because the Temkins have stated in their brief that in light of the fact that discovery was not concluded, the district court "should have deferred ruling or granted Plaintiffs' motion to reconsider."

We review denials of Rule 59(e) motions under an abuse of discretion standard. *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir.1989). The primary question raised by the district court's entry of summary judgment in the face of the Temkins' Rule 56(f) motion and its subsequent denial of the Rule 59(e) motion is whether the evidence produced by further discovery would have created a genuine issue of material fact or would have led the court to conclude that, viewing the evidence in a light most favorable to the Temkins, a jury might reasonably conclude that Deputy Sheriff Selby's conduct met the "shocks the conscience" standard.

The Supreme Court has noted that once a plaintiff "has named a witness to support her claim, summary judgment should not be granted without ... some-

how showing that the named witness' possible testimony raises no genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 328, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (White J., concurring). Yet because, as discussed in part II, *supra*, the necessary predicate for a finding of liability on the part of the Commissioners is absent, any further evidence developed through the depositions the Temkins sought to include in the record would have been immaterial to the court's judgment, because it would not have shed any additional light on Selby's liability. *Cf. Miltier v. Beorn*, 896 F.2d 848, 852–53 (4th Cir. 1990) (inferences drawn from depositions of experts created genuine issue of material fact as to whether standard of care had been met, rendering summary judgment improper). It would seem clear, then, that the district court did not abuse its discretion in denying the Temkins' Rule 59(e) motion.

For all of the foregoing reasons, the judgment of the district court is

AFFIRMED.