UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1965

KIMBERLY HOPKINS, individually and on behalf of all others
similarly situated,

              Plaintiff - Appellant,

     v.

HORIZON MANAGEMENT SERVICES, INCORPORATED; DEUTSCHE BANK
NATIONAL TRUST COMPANY,

              Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Spartanburg.  Henry M. Herlong, Jr., District
Judge.  (7:06-cv-02935-HMH)

Argued: October 30, 2008         Decided: December 3, 2008

Before GREGORY and DUNCAN, Circuit Judges, and Richard D.
BENNETT, United States District Judge for the District of
Maryland, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James Mixon Griffin, LAW OFFICES OF JAMES MIXON GRIFFIN,
Columbia, South Carolina, for Appellant.  Hamlet Sam Mabry, III,
HAYNSWORTH, SINKLER & BOYD, P.A., Greenville, South Carolina,
for Appellees.  **ON BRIEF:** Richard A. Harpootlian, RICHARD A.
HARPOOTLIAN, P.A., Columbia, South Carolina; Tucker S. Player,
PLAYER LAW FIRM, L.L.C., Columbia, South Carolina, for
Appellant.  Charles M. Sprinkle, III, Christopher T. Brumback,

HAYNSWORTH, SINKLER & BOYD, P.A., Greenville, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant, Kimberly Hopkins ("Hopkins"), brought suit in the District Court of South Carolina alleging a violation of Section 9 of the Real Estate Settlement Procedures Act ("RESPA"). 12 U.S.C. § 2608. Hopkins claims that Appellees, Deutsche Bank and Horizon Management acting as its agent (collectively "Horizon"), violated Section 9, which prohibits requiring the purchaser of real estate to buy title insurance from a particular title company. Hopkins also sought class certification. Horizon moved for summary judgment, claiming that the case presented no genuine issue of material fact. The district court granted Horizon's motion for summary judgment and denied certification of the class as moot. Because none of Hopkins's claims of statutory violations is supported by any evidence in the record giving rise to a genuine issue of material fact, we affirm.

I.

Horizon acts as a marketing and sales agent for properties purchased at foreclosure sales, which are known as Real Estate Owned ("REO") properties. Hopkins signed a contract with Horizon to purchase an REO property that had been acquired by Deutsche Bank. J.A. at 43, 364-72. This contract included

3

Addendum #1 ("Addendum"), which Hopkins signed, stating that Horizon would select the title and closing agent.

Two title insurance policies were also needed to complete the sale. An owner's title policy protects the new owner of record against claims to the title. In the Addendum, Horizon contracted to pay the premium for the owner's title insurance policy, regardless of whether the purchaser requested an owner's policy. J.A. at 110, 458. Hopkins' mortgage lender required her to obtain a lender's title policy and a closing protection letter to ensure against mishandling of the closing documents. J.A. at 459.

At closing, Horizon purchased the owner's policy from Fidelity Title, its chosen issuer. The policy was issued by Jayhawk Title, an authorized title insurance agent for Fidelity. Jayhawk is wholly owned by Robert L. Luce who, in his capacity as an attorney, was Horizon's closing agent. J.A. at 459.

Hopkins also initially selected a law firm, the Player Law Firm, to represent her at the closing. The Player Firm performed a title search on Hopkins' behalf and issued a lender's commitment. Hopkins was subsequently informed by the Luce firm, on behalf of Horizon, that the Addendum required the title work to be done by Horizon's chosen agent. J.A. at 460. Significantly, however, no representation was made that this undertaking included the issuance of the lender's title policy.

4

In the end, Hopkins bought her lender's title policy from Fidelity and was not represented by counsel at closing. J.A. at 460-61. She now claims that Horizon's practices surrounding the sale and closing constituted a violation of her rights under Section 9 of the RESPA not to be required to choose a particular title insurer.

## II.

We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Meson v. GATX Tech. Servs. Corp., 507 F.3d 803, 806 (4th Cir. 2007). At the summary judgment stage, once the moving party has identified the absence of a genuine issue of material fact, the non-moving party bears the burden of identifying specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).

Hopkins claims that the Addendum she signed resulted in Horizon indirectly requiring her to purchase title insurance from a particular title company in violation of Section 9. There are two title policies at issue, the lender's and the

5

owner's, and Hopkins argues that Horizon's practices associated with each were in violation of Section 9. We take them in turn.

A.

Hopkins first claims that because Horizon chose the issuer of the owner's title policy, she was effectively required to purchase this policy from the title company selected by Horizon. However, Hopkins concedes that Horizon "paid for the owner's policy." J.A. at 92, 101. This admission defeats any claim that Hopkins was required to purchase this title insurance "from any particular title company." 12 U.S.C. § 2608(a). Her argument that "purchase" in the language of Section 9 should be read to mean "obtain possession" rather than "pay for" contrasts with the plain meaning of the term and is without merit. The owner's policy was in Hopkins's name and its insurance covers her against claims to title of the property she now owns. However, Horizon, not Hopkins, paid for the policy, and thus Section 9 of the RESPA does not apply. If Hopkins could show that she was required to pay further money to maintain the owner's insurance, she might arguably be "purchasing" a part of the policy. The record is, however, devoid of evidence that this is the case.

Hopkins also contends that the costs of the owner's policy were indirectly passed on to her in violation of Section 9

6

because she was required to pay closing fees to the closing and title agent, Luce, who was chosen by Horizon. She claims these fees were in turn used to purchase the owner's policy. This interpretation of the closing fee finds no support in the record. J.A. at 87 (Hopkins testifies that seller paid the premium for the owner's policy); J.A. at 129 (denominating the owner's policy premium as $270 and recording in line 1108 that it was paid from *seller's* funds at settlement); cf. Supp. J.A. at 30 (instructing that lines 1108-1110 of the HUD form are those that deal with title insurance). Hopkins's argument that Horizon is passing on the cost of the owner's title insurance in the pricing of the property, separately from the question of the closing fee, also cites nothing in the record; and she falls short of showing that Horizon required her to purchase owner's title insurance from a particular title company as a condition of the sale.

B.

Hopkins also argues that Horizon's choice of the title agent and owner's policy indirectly required her to use a particular title company for the purchase of the lender's title policy. Hopkins initially had title work performed by the Player Law Firm. Horizon's lawyer, Luce, refused to accept this work since under South Carolina state law title work is a legal

service, Doe Law Firm v. Richardson, 636 S.E.2d 866, 868 (S.C. 2006), and it is therefore subject to ethical and malpractice considerations. However, this refusal by Luce did not constitute rejection of any title policy Hopkins may have chosen. J.A. at 215-16, 224-227. Once informed that the title work must be done by Luce, Hopkins chose Luce to be her title agent for the sale; he performed the title search and examination. Luce also issued a lender's title commitment for the benefit of Hopkins's mortgage lender. J.A. at 459. However, there is no evidence that Hopkins was *required* as a condition of sale to purchase the lender's policy from Horizon's title agent or the company providing the owner's policy.

Hopkins claims that she was told by her own agent, whom she had hired as her mortgage broker, that she was required to purchase the lender's policy from the same issuer as the owner's policy. Whether or not this statement affected the transaction, the district court correctly concluded that it cannot be imputed to Horizon. J.A. at 471. According to an informal Department of Housing and Urban Development opinion, a seller may violate Section 9 by choosing a title attorney or agent if that attorney or agent requires the buyer to use a particular title insurance company. Supp. J.A. at 80; J.A. at 471. However, Hopkins has pointed to no evidence in the record which could support a

finding that in this case the title agent, Luce, constrained Hopkins's choice of title insurer. See J.A. at 471-72.

In addition, whatever conditions Hopkins's lenders may have imposed upon her selection of insurer cannot be imputed to Horizon. As the district court found in a well-reasoned and thorough opinion, Hopkins chose her own mortgage broker, and any requirements that her broker imposed are not the responsibility of or attributable to Horizon. J.A. at 469, 471.

Hopkins asserts that the transaction was economically coercive because she received a significant discount on the lender's policy when she purchased it from the same title insurance company that had issued the owner's policy to Horizon. J.A. at 470. The fact that Hopkins paid less for a lender's policy purchased from the company already providing owner's insurance may be an economic benefit, but it is not a "requirement" and thus does not come within the language of Section 9.

Finally, Hopkins claims that Horizon was affirmatively required to inform her of her right to choose her own title insurance company. No notice requirement appears in the RESPA or in the associated regulations. We decline to impose such a requirement where, as here, the language of the Congressional enactment is clear on its face.

9

III.

Hopkins has not met the burden of showing that a genuine issue of material fact exists in this case. Accordingly, the opinion of the district court granting summary judgment and denying the class certification as moot is

AFFIRMED.