James H. RUCKER, Individually and as next friend of David W. Rucker, Minor, Plaintiff–Appellant,

v.

HARFORD COUNTY, MARYLAND; Gary Vernon; Richard F. Williams; Steven Bodway; Elmer H. Tippitt, Superintendent; James Gruver; David B. Alexander; Dominic J. Mele; John J. O'Neal, Defendants–Appellees,

and

Harford County Sheriff's Department; Gerard Morgan; Jerry David Mace; Vernon James Conoway; Carl Pearsall, Defendants.

No. 90–2453.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1991.

Decided Oct. 3, 1991.

See also 316 Md. 275, 558 A.2d 399.

---

Daniel M. Clements, Israelson, Salsbury, Clements & Bekman, Baltimore, Md., argued (Suzanne K. Farace, on the brief), for plaintiff-appellant.

Carmen Mercedes Shepard, Asst. Atty. Gen., Baltimore, Md., argued (J. Joseph Curran, Jr., Atty. Gen., Stuart M. Nathan, Asst. Atty. Gen., Baltimore, Md., Jefferson L. Blomquist, Harford County Solicitor's Office, Bel Air, Md., Diana G. Motz, Frank, Bernstein, Conaway & Goldman, Michael J. Travieso, Gallagher, Evelius & Jones, Philip M. Andrews, Kramon & Graham, P.A., Baltimore, Md., on the brief), for defendants-appellees.

Before PHILLIPS and NIEMEYER, Circuit Judges, and RESTANI, United States Court of International Trade, sitting by designation.

## OPINION

PHILLIPS, Circuit Judge:

This appeal presents as its principal issue whether, and if so to what extent, the fourth amendment's prohibition of unreasonable seizures of the person or the fourteenth amendment's due process clause provide constitutional protection to an innocent bystander against being unintentionally injured by police officers trying to apprehend a fleeing criminal suspect. It also presents the issue whether one bearing an intimate familial relationship to a person so injured has any constitutional right based upon the relationship that is thereby violated.

We conclude that the fourth amendment provides no protection to such a bystander because under the circumstances he is not being "seized" by the police officers. We further conclude that though the due process clause provides substantive protection to such a bystander against the infliction of personal injury by police conduct sufficiently outrageous to constitute completely arbitrary state action, the police conduct indisputably established on this record did not violate that substantive due process right. Finally, we conclude that if there be any constitutional right in one other than a person so injured arising from their intimate familial relationship, the one alleged here could only be a derivative right which fails with failure of the primary claim.

We therefore affirm.

### I

The tragic events giving rise to this action began on July 28, 1987, when Jerry Mace, under the influence of PCP, stole a friend's Ford Bronco. From Edgewood, Maryland, he drove southbound on Interstate 95. Responding to a report that Mace was driving recklessly and had failed to pay a highway toll, a Maryland State Trooper, Officer Pearsall, set out to find and apprehend him. Having located Mace on I–95, the officer, later joined by local police officers, attempted to overtake and detain him. Mace refused to stop, speeding away wildly, weaving in and out of traffic. After running through the Maryland House rest stop, Mace drove onto a median strip. There he drove in circles and was seen dancing in his car. Eventually, he stopped on the median strip, but when Pearsall again attempted to detain him, he again sped away, this time southbound in the northbound lanes of I–95. Finally, Mace left I–95 via the northbound entrance ramp onto Route 24.

The police lost sight of Mace for a brief period until he was seen stopped at the corner of Route 152 and Hanson Road. Trooper James Gruver pulled up to him at that location and stepped out of his car, whereupon Mace drove away, barely avoiding a head-on collision. Deputy Sheriff David Alexander positioned himself up the road a bit, near the corner of Trimble Road and Route 152, while Gruver made chase. At this point, Mace turned off the road into the Walls family's field. Gruver followed Mace onto the field, where Mace was again seen driving in circles. Mace then drove his Bronco at Gruver's car, forcing Gruver to swerve to avert a collision. Mace then drove back onto Trimble Road, where he continued for about a mile, veering, finally,

over an embankment and into a cornfield on the Heine farm. Once in the cornfield, the Bronco was hidden from view.

Having heard of this automobile chase on the police radio, Deputies Stephen Bodway, Charles Hellman, Gary Vernon, and Ricky Williams all responded to assist Alexander and Gruver. Vernon, Alexander, Hellman, and Gruver positioned themselves at the corners of the cornfield, hoping to block any attempts by Mace to leave the field.

Meanwhile, David Rucker, Michael and Valerie Baublitz, and the Baublitz's three children were driving down Trimble Road in the direction of the Heine driveway. Beyond the Heine driveway, on Trimble Road, an officer blocked the road. Rucker drove into the Heine driveway and approached Deputy Vernon to ask what was going on. Vernon told Rucker to leave the scene. Rucker then drove the car with his passengers across Trimble Road, up an embankment, and into another field. Mrs. Baublitz and the children remained in the car. At some point Rucker and Michael Baublitz left the vehicle.

Deputies Bodway and Conoway went into the cornfield on foot, trying to see the Bronco. Bodway disappeared into the cornfield with no means of communication. He spotted Mace in the Bronco, drew his weapon, and told Mace to freeze and leave the Bronco. Instead, Mace accelerated—it is unclear whether he went towards Bodway—sending dirt into Bodway's face. Bodway shot at the Bronco's tires. Mace continued toward the Heine driveway where Vernon was standing. Vernon noticed Michael Baublitz in the distance, standing beyond the driveway and he shouted for Baublitz to get out of the way. Baublitz then disappeared from sight.

Meanwhile, Mace drove right into the embankment bordering the Heine driveway. Vernon yelled for Mace to stop, but he did not. As Mace drove the vehicle down the driveway towards Trimble Road, Vernon stepped down the driveway, crouched, and fired twelve shots of his semi-automatic weapon at the Bronco's tires. Though not established as fact, it appears, and we assume for purposes of this case, that one of these shots hit Ruck-

er, who apparently was lying on top of the embankment on the other side of Trimble Road. Vernon maintains that he was unaware of Rucker's presence there. A witness who was sitting in Vernon's car in the driveway later testified, however, that she could see Rucker from her vantage point. Two other officers opened fire on the Bronco, finally hitting and collapsing its tires. When Mace then fled on foot, he was captured, and at this point passes from this account.

Rucker's father, individually and as next friend of Rucker, then brought this action alleging claims against the various county police officers involved in the incident and Harford County, seeking damages for Rucker's injury. The claims in Rucker's behalf alleged, under 42 U.S.C. § 1983; violations of constitutional rights secured by the fourth amendment and the due process clauses, parallel state constitutional claims under the Maryland Declaration of Rights, and state tort claims. The claims in plaintiff's individual capacity alleged under 42 U.S.C. § 1983, a violation of the constitutional right "to intimate association."

The district court dismissed all claims against all defendants by summary judgment. This appeal followed.

On the appeal, appellant only challenges the dismissal by summary judgment of his § 1983 claims brought in his individual and representative capacities against the various police officers in their individual capacities, and the parallel state constitutional claims against those officers, conceding that the latter rise or fall with the former. No challenge is made to the dismissal of these claims against the County, nor to dismissal of the pendent state-law tort claims. We therefore address only the propriety of the district court's dismissal of the parallel federal and state constitutional claims, focussing on the § 1983 claims as controlling.

II

The primary claim, that made in behalf of Rucker minor, was that his shooting by one of the police officers involved in the chase (presumably Vernon) violated his

fourth amendment, via fourteenth amendment, right not to be "unreasonably seized," and his fourteenth amendment right to "substantive due process."

### A

■ The fourth amendment claim is directly foreclosed by *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), which held that one is "seized" within the fourth amendment's meaning only when one is the *intended object* of a physical restraint by an agent of the state. This means that a fourth amendment seizure may occur notwithstanding that the person restrained was mistakenly thought to be another, because he nevertheless is the intended object of the specific act of physical restraint. But it does not mean, as Rucker contends, that a seizure occurs just so long as the act of restraint itself is intended (here the act of shooting) though it restrains one not intended to be restrained. *See Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir. 1991) (holding that "unintended consequences of government action [cannot] form the basis for a fourth amendment violation"); *see also El Centro v. United States*, 922 F.2d 816, 822 (Fed.Cir.1990).

It being undisputed on the summary judgment record that Rucker was not the intended object of the shooting by which he was injured, he was not thereby "seized" within contemplation of the fourth amendment. The district court therefore did not err in dismissing that claim.

### B

Though the fourth amendment's specific protection against unreasonable seizures of the person does not, by definition, extend to unintentionally injured "bystanders" such as Rucker, the substantive protections of the due process clause may—in appropriate circumstances. We recently have so held in a case of first impression in this circuit, *Temkin v. Frederick County Comm'rs*, 945 F.2d 716 (4th Cir.1991) (innocent "bystander" injured in high speed auto chase by police may have substantive due process claim; not established on facts of case).

■ *Temkin* held in effect that "substantive due process" guarantees embodied in the due process clause of the fourteenth amendment protect everyone subject to its general protections against being physically injured by agents of the states acting irrationally and arbitrarily, without regard to whether the injury was intended to be inflicted upon the victim. Hence, in appropriate circumstances, substantive due process protections might extend to an "innocent bystander" such as Rucker, even though the "restraint" imposed upon him by the infliction of physical injury did not constitute a fourth amendment "seizure."

But the residual protections of "substantive due process" in this (or any) context run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies. *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) ("bar[s] certain government action regardless of ... procedures"); *cf. id.* at 327, 106 S.Ct. at 662 (procedural due process not denied where state provides adequate post-deprivation remedy). Irrationality and arbitrariness imply a most stringent standard against which state action is to be measured in assessing a substantive due process claim. In this circuit, as generally, the test where physical injury is the basis of claim, is that the state actor's conduct must "amount to a brutal and inhumane abuse of official power literally shocking to the conscience." *Temkin*, 945 F.2d at 720.

■ The undisputed facts of record here reveal police conduct that does not approach such an abuse of official power. The police, including Vernon, the presumed direct actor, were legitimately about the dangerous business of apprehending a madman run amok, threatening the lives of everyone in his way. Given his obvious willingness to injure them or anyone else in order to escape arrest, as evidenced by two near-misses when officers attempted to close with him, they were justified in resorting to the force used to stop his further flight. Rucker was an unfortunate intrud-

er into a scene of visible danger from which he was warned by the police to leave. So far as the record reveals, the police in the tense situation with which they were dealing were entitled to assume that he had left. So far as the record shows, he had time to do so before the tragic shooting occurred. For whatever reason, he did not. It is undisputed that his shooting was purely accidental. Whether it was negligent is not before us; on a claim of constitutional violation of substantive due process it would in any event not suffice even if proven. While it is possible to think of accidental shootings by police in situations of this general type that might be so reckless and irresponsible as to constitute "inhumane" conduct "literally shocking to the conscience" (shooting into a crowd at close range, or the like), this is no such situation. The only suggestion that Vernon even had the opportunity to see that Rucker might be somewhere in or near the line of fire, was the statement of a passenger who remained in Rucker's parked car after he had left it, that from that vantage point she could see Rucker at the time he was shot. The relative locations of Vernon and this witness, the relevant topography of the area at the time, are not clear enough to refute Vernon's claim that he did not see Rucker. Even if he had, we still would conclude that given the exigencies of the situation, his accidental shooting of Rucker would not have constituted the kind of "oppressive" abuse of governmental power, see Daniels, 474 U.S. at 331, 106 S.Ct. at 664, against which substantive due process gives protection.

Obviously, if the conduct of the assumed direct actor, Vernon, does not constitute a substantive due process violation, that of none of the others involved in the chase could.

Accordingly, the district court did not err in granting summary judgment as to Rucker's "substantive due process" claim.

### III

Appellant's claim in his own behalf that the defendants' conduct in injuring his son violated appellant's separate constitutional liberty interest of "intimate association," is one of first impression in this court.

Some other courts have recognized such an independent constitutional right, variously locating it in the first amendment's guarantee of free association, see Trujillo v. Board of County Comrs, 768 F.2d 1186, 1189–90 (10th Cir.1985), and in the "substantive component" of the due process clause, see Kelson v. Springfield, 767 F.2d 651, 654 (9th Cir., 1985); Bell v. Milwaukee, 746 F.2d 1205, 1245 (7th Cir.1984).

Courts recognizing the existence of such a right also differ on its nature, hence on the way in which it can be violated. Some hold it is only violated by state action that directly injures the relationship itself, as by the taking of a child from its parents' custody or by interfering with matters of family choice. See Ortiz v. Burgos, 807 F.2d 6, 7–9 (1st Cir.1986). Others apparently hold it may be violated by any conduct which, though unrelated to the relationship, violates the constitutional right of any person in the relationship, on the theory that such conduct incidentally injures the relationship, hence the "liberty interest" in its preservation possessed by all parties to it. See, e.g., Smith v. Fontana, 818 F.2d 1411, 1418 (9th Cir.1987) (close relative of person killed by unconstitutional conduct of police has viable § 1983 claim); Bell v. Milwaukee, 746 F.2d at 1245 (same).

The recognition of such a constitutional right—on either theory—presents issues of obvious importance and conceptual difficulty which we need not decide in this case, but can reserve for another day. We may do so because even if recognized, neither could be invoked successfully by Rucker's father on the undisputed facts of record in this case.

The police conduct here obviously was not directed at, nor did it directly impinge upon the familial relationship itself, and the claim made here could not indeed be interpreted as seeking to invoke a conduct-directly-related-to-relationship theory.

The other theory, of incidental injury to an associational interest by conduct unrelated to it that violates the constitutional right of another, also would be unavailing here. That theory essentially gives rise to a derivative claim that is dependent upon

predicate proof of the direct violation of another's constitutional right. Here that would require predicate proof of a violation of the son's constitutional right. That of course is not possible in view of our earlier rejection of that claim.

We therefore conclude that if there be any such constitutionally protectible relational interest as some courts have recognized—an issue we reserve—it could not be successfully invoked by claimant here.

AFFIRMED.