**Marjorie C. HICKS, Administratrix of the Estate of Richard Edward Hicks, Plaintiff,**

v.

**Linwood Allen LEAKE, Jr. and William F. Corvello, Defendants.**

Civ. A. No. 91–0032–C.

United States District Court, W.D. Virginia, Charlottesville Division.

Jan. 15, 1992.

As Amended March 3, 1992.

Matthew B. Murray, Richmond and Fishburne, Charlottesville, VA, for plaintiff.

V.R. Shackelford, III, Orange, VA, Lee Melchor, Gregory E. Lucyk, Office of Attorney General, Richmond, VA, for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This personal injury action was brought under 42 U.S.C. § 1983 by Marjorie C. Hicks (Mrs. Hicks) against a Virginia state policeman and the state police superintendent, for causing the death of her husband in an automobile accident. Plaintiff alleges her husband's Fourth and Fourteenth Amendment rights were violated by the defendant state officers. Before the court is the Defendants' motion to dismiss brought under Rule 12(b)(6), Fed.R.Civ.P.

According to the complaint, on the evening of February 21, 1990, state trooper Linwood Allen Leake, Jr. (Officer Leake) was driving south on Route 29 North in Madison County. He saw a small car speeding in the northbound lane and turned around to pace the car at a high speed without activating his beacon or siren. As Officer Leake came out of a deep dip in Route 29, a car occupied by the plaintiff's husband and son, Richard and Edward Hicks, attempted to cross the northbound lane of the highway to enter Madison High School. Leake was unable to stop his patrol car, and the ensuing collision between the two cars killed both Richard and Edward Hicks.

Although Defendants move to dismiss on the several grounds, including immunity and abstention, the Court finds it necessary only to consider under Rule 12(b)(6) the legal sufficiency of plaintiff's excessive force and substantive due process claims.[1] In so considering this claim, the Court notes that Mrs. Hicks has suggested in her brief that Defendants' motion to dismiss is essentially a Rule 56 motion for summary judgment, and that the court should allow the parties to complete their discovery before taking up a motion for summary judgment. The Court rejects this position because it will rule only on the sufficiency of the pleadings and will consider no matters outside of the pleadings.

## I. The Fourth Amendment Claim

This Court can dismiss the complaint only if, taking the allegations of the complaint in the light most favorable to plaintiff, it nonetheless concludes that Plaintiff could prove no set of facts entitling her to relief for injuries caused by the excessive use of force during a "seizure." *See Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989). Defen-

---

1. Though the Court is persuaded that Defendants might successfully raise a qualified immunity defense, it will not now rule on that issue.

dants argue that because no "seizure" occurred, Mrs. Hicks has failed to state a Fourth Amendment claim. Under the Fourth Amendment, a seizure requires an "intentional acquisition of physical control" over a person or property. *Id.* at 596, 109 S.Ct. at 1380.

■ The *Brower* Court stated that "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking, ... but the detention or taking itself must be willful. This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act." *Id.* The Fourth Circuit, in interpreting the *Brower* decision explained that a seizure "may occur notwithstanding that the person restrained was mistakenly thought to be another, because he nevertheless is the intended object of the specific act of physical restraint." *Rucker v. Harford County,* 946 F.2d 278, 281 (4th Cir.1991) (published). Therefore, the decisive issues in this case are first, whether or not Officer Leake intended a seizure at all, and second, if so, whether the Hicks's vehicle was in fact the object of a seizure.

Distinguishing the issues of specific and general intent in another Fourth Amendment case involving a police officer's accidental discharge of his weapon at a person he was questioning, Judge Merhige recently wrote, "it is irrelevant whether the police officer intended to brutalize a suspect or merely intended to discipline him, but it is still relevant whether the officer intended to perform the underlying violent act at all." *Glasco v. Ballard,* 768 F.Supp. 176, 179 (E.D.Va.1991); *see also Rucker,* 946 F.2d at 281 (no violation of Fourth Amendment rights of unintended victim of stray bullet fired during police chase); *Landol–Rivera v. Cruz Cosme,* 906 F.2d 791, 795–96 (1st Cir.1990) (no Fourth Amendment seizure where hostage was injured by police bullet fired at hostage-taker). The *Rucker, Glasco* and *Landol–Rivera* cases establish that specific intent to restrain must be alleged and proven in order to establish a claim for an excessive force violation of the Fourth Amendment.

■ The facts as alleged demonstrate that the collision was an "unknowing act" instead of a willful detention. Indeed, Count I of the complaint essentially states a claim for negligence. The intent alleged therein goes only to Officer Leake's continuing intent to pursue the unknown speeder. In light of Leake's pursuit of the speeder and apparent attempt to position himself down the road to assist in the detention of a speeder, this Court can not infer that at the time of the collision he intended to apprehend the Hicks's vehicle as it crossed the northbound lane of Route 29.

■ In the absence of any intent to detain the Hicks's vehicle, the Court finds that Plaintiff has failed to state a Fourth Amendment claim upon which relief can be granted against either Officer Leake or Superintendent Corvello. Because the Court has determined that no seizure was intended, it need not consider whether or not the Hicks's vehicle was the object of a detention. Nevertheless, the Court notes that the Complaint failed to make such an allegation, or to allege any rationale under which the Hicks men were the object of a detention (*e.g.* a mistake of identity between the speeder and the Hicks's vehicle). Thus plaintiff has failed to allege either an intent to seize or that the Hicks's vehicle was the object of a seizure. Both are necessary to state an excessive force claim under the Fourth Amendment. *See Brower,* 489 U.S. at 596, 109 S.Ct. at 1381; *Rucker,* 946 F.2d at 281.

This result, though achieved by analyzing the technical requirements of an excessive force claim, is also consistent with the broad purpose of the Fourth Amendment. As the Supreme Court stated in *Brower,* "the Fourth Amendment addresses 'misuse of power,' ... not the accidental effects of otherwise lawful government conduct." *Brower,* 489 U.S. at 596, 109 S.Ct. at 1381.

## II. The Fourteenth Amendment Claim

■ Defendants argue that because the Fourth Circuit applies a shock-the-conscience standard in police chase cases, *see Temkin v. Frederick County Commissioners,* 945 F.2d 716, 723 (4th Cir.1991), *Rucker,* 946 F.2d at 281–82, this complaint does not allege facts that violate the substantive due process component of the Fourteenth Amendment. In order to determine whether *Temkin's*

shocks-the-conscience test is met, the Court must compare the facts of this case to those in *Temkin*. The Court rejects Plaintiff's suggestion, however, that discovery must be completed before the Court can make such a comparison.

In *Temkin*, the plaintiff, a bystander, was accidentally injured as a result of a very similar nighttime police automobile chase in which the pursued party and the pursuing officer lost control and crashed into the plaintiff's car. Reviewing the facts *de novo* on appeal from a grant of summary judgment in favor of defendant, the Fourth Circuit ruled that although the police officer's conduct was "disturbing and lacking in judgment," it did not meet the shocks-the-conscience standard. 945 F.2d at 723. Key facts were that

> 1) the chase continued for a significant period of time over a ten mile area; 2) the chase continued at a very high rate of speed; 3) the case was initiated because of a minor violation; 4) the police already had, at a minimum, a partial identification of the license plate of the suspect vehicle; and 5) the chase violated [a sheriff's department order] because [the officer] failed to maintain radio contact with his supervisor throughout.

*Temkin*, 945 F.2d at 723. Defendants argue that the facts of this case are so similar that the Court should dismiss it for failure to state a constitutional claim upon which relief can be granted.

Indeed, the first three facts are almost identical to those alleged in Plaintiff's complaint and require no discussion. As for the fourth, the partial identification is analogous to the fact that Officer Leake called ahead for assistance which was likely to lead to a stop: arguably, neither chase need have continued as long as it did. And finally, the fifth key fact, the violation of the radio contact

order, is analogous to Officer Leake's violation of the conditions of Va.Code Ann. § 46.2–920, which grants emergency vehicles an exemption from the speed limit when proceeding with flashing lights and a siren if "reasonably necessary" [2]: both chasing officers breached a clearly defined and applicable official standard of conduct.[3]

Mrs. Hicks would distinguish this case primarily on basis of the two facts that the Court has just found analogous to those of the *Temkin* case: another officer up the road would soon have intercepted the pursued vehicle; and Leake breached the conditions providing an exemption from criminal prosecution for drivers of emergency vehicles who exceed the speed limit. The Court disagrees with Mrs. Hicks that these distinctions counsel against applying *Temkin's* shock-the-conscience standard in this case. All the facts discussed strongly support a negligence claim against Officer Leake, but they do not meet the shock-the-conscience standard.

The Fourth Circuit recently explained in the *Rucker* case that:

> "the residual protections of 'substantive due process' in this (or any) context run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies. Irrationality and arbitrariness imply a most stringent standard against which state action is to be measured in assessing a substantive due process claim. In this circuit, as generally, the test where physical injury is the basis of the claim, is that the state actor's conduct must 'amount

---

2. The exemption provided by the Virginia statute is limited though:
   > Such exemptions shall not, however, protect the operator of any such vehicle from criminal prosecution for conduct constituting reckless disregard of the safety of persons and property. Nothing in this section shall release the operator of any such vehicle from civil liability for failure to use reasonable care in such operation.
   Va.Code Ann. § 46.2–920(B).

3. The court does not here intend to suggest that the practice of pacing speeding vehicles without lights flashing and siren sounding is not normally "reasonably necessary" within the meaning of § 46.2–920. The complaint in this case, however, alleges a "pace" lasting 11 miles and conducted at speeds of up to 105 miles per hour. These factors distinguish Officer Leake's conduct from routine paces of shorter duration.

to a brutal and inhumane abuse of official power literally shocking to the conscience.' "

946 F.2d at 281 (citations omitted).

The Fourth Circuit explained that it adopted a shocks-the-conscience standard in *Temkin* because in light of *Daniels v. Williams*, 474 U.S. 327, 334, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986), it wished a "stricter standard" than gross negligence to apply in chase cases. *See* 945 F.2d at 723. In *Daniels*, the Supreme Court reaffirmed the validity of substantive due process claims, but foreclosed such actions premised on mere negligence. It explained that the Due Process Clause was " 'intended to secure the individual from the arbitrary exercise of the powers of government'. . . . And by barring certain government actions regardless of the fairness of the procedures used to implement them, ... [the Due Process Clause] serves to prevent governmental power from being 'used *for purposes of oppression.*' " *Id.* at 331, 106 S.Ct. at 665 (emphasis added).

This Court believes that the Fourth Circuit, by adopting in *Temkin* a "most stringent standard," 946 F.2d at 281, namely the shocks-the-conscience standard, has attempted to focus the attention of the district courts on conduct that could be considered oppressive. And the mere mention of the word "conscience" in the shocks-the-conscience standard, suggests to this Court that at least some slight degree of intent to oppress must be demonstrated in the challenged activity. This Court's *sentiments* can be shocked by negligence or recklessness; but its *conscience* is shocked only where some intent is involved. That, quite simply, is what a conscience is all about.

■ Plaintiff's allegations have not shocked this Court's conscience, and should not shock those of other courts. As the First Circuit in *Landol–Rivera* explained with respect to the lower callous-indifference standard it used to weigh substantive due process claims, "[w]e decline to hold that the mere presence of risk reflects a callous indifference to the constitutional rights of those individuals potentially harmed." 906 F.2d at 797 (robber's hostage injured by police gunfire at robber). Nor does the mere presence of risk shock the judicial conscience. The

facts of this case sadden the Court profoundly, but they simply do not bespeak such an abuse of official power by Officer Leake as would violate the substantive component of the due process clause.

■ A post-deprivation remedy for negligence is available under Virginia's tort laws, and the Court is aware that Mrs. Hicks has begun to pursue such a remedy in a parallel proceeding. Without deciding the issue here, the Court is of the opinion that an action in negligence is likely to be successful under these facts. And rightly so: that is her proper remedy. Section 1983 is not "a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

■ Finally, with respect to the substantive due process claim brought against Superintendent Corvello, no supervisory liability is applicable where no constitutional violation was effected by a subordinate. In any case, even if the Court were persuaded that Richard Hicks' constitutional rights had been violated by Officer Leake, the Court would be compelled to take judicial notice that in many jurisdictions, it is standard police procedure under certain circumstances (*e.g.* burglaries in progress) for an officer to proceed quickly to the scene without using flashing lights or a siren. The Court is uncertain whether that is also the case in the counties in which Officer Leake patrolled, but even if it were not, the Court would have some difficulty finding unreasonable—much less shocking—a supervisory bulletin instructing officers to use their discretion as to when they might travel above the speed limit without flashing lights and siren. Such a policy is patently consistent with the "as may be reasonably necessary" language of the Virginia statute. Va.Code Ann. § 46.2–920(B), *supra* note 3. An unreasonable decision by a single officer does not an unsound policy make.

For these reasons, the motion to dismiss shall be granted for failure to state a consti-

tutional claim. An appropriate Order shall this day issue.