UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT L. BURGESS,
<u>Plaintiff-Appellant,</u>

v.

HOWARD COUNTY, MARYLAND; RICKY
LEE, Officer, Individually and in his
official capacity; STEVEN STANTON,
Officer, Individually and in his
official capacity,
<u>Defendants-Appellees,</u>                               No. 97-2628

and

RICKY JOHNSON, Officer, Individually
and in his official capacity; JOHN
DOE #1, Officer, Individually and in
his official capacity; JOHN DOE #2,
Officer, Individually and in his
official capacity,
<u>Defendants.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-97-2378-S)

Submitted: July 14, 1998

Decided: August 4, 1998

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

Matthew E. Bennett, David F. Albright, Jr., HORN & BENNETT, P.A., Baltimore, Maryland, for Appellant. Barbara M. Cook, Howard County Solicitor, Rebecca A. Laws, Senior Assistant County Solicitor, Ellicott City, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert L. Burgess ("Burgess") appeals the district court's grant of summary judgment to Howard County, Maryland and two members of the Howard County Police Department (collectively the "defendants") in Burgess' suit against them for alleged violations of his rights under the United States Constitution, as well as its dismissal of certain state law claims. Burgess sued the defendants pursuant to 42 U.S.C. §§ 1983, 1985, and added to those federal claims state law negligence, civil conspiracy, false imprisonment, battery, and defamation causes of action. The district court, however, found that Burgess raised "no triable dispute" with regard to his federal claims and granted the defendants' motion for summary judgment. Accordingly, the district court also dismissed the state law claims on the ground that it no longer had jurisdiction over them. Because we find no error in these determinations, we affirm.

I.

Burgess' suit against the defendants arose out of an incident that occurred on August 26, 1994 in Columbia, Maryland. On that evening, the Howard County, Maryland, Police Department (the "Department"), which has jurisdiction over Columbia, received an anonymous tip that Philip Wise, known to the Department as "Philly

2

Dog" was, in conjunction with another individual, selling drugs outside the Shadow Oaks Condominiums. The Department dispatched Officers Lee and Stanton, who were in plain clothes, to investigate. Upon arrival at the scene, the officers observed two black males, whom they later identified as Burgess and Dennis Smith ("Smith"), standing on a bicycle path adjacent to the condominium parking lot. The two officers began surveillance and over the next thirty minutes, observed behavior that both officers, one of whom had extensive experience in narcotics work, thought to be consistent with the sale of illegal drugs.[1]

After this period of surveillance, the officers decided to approach the two suspects. Because the officers thought one of the suspects was "Philly Dog," who was known to them to be armed, Officer Lee drew his handgun as they approached the suspects. Lee then ordered the suspects to "freeze," and immediately thereafter accidentally discharged his handgun in a downward direction. The bullet from this discharge struck the pavement between Lee and the suspects, and a fragment of the bullet struck Burgess in the lower part of his right leg. In addition, another fragment of the bullet struck Smith in the hand.

The officers did not arrest Burgess or Smith, but searched both for weapons while waiting for medical and supervisory personnel to arrive. Although Burgess was taken to a hospital, the wound to his leg did not require treatment. Burgess subsequently brought this action against Howard County and Officers Lee and Stanton. The court found that Burgess presented no triable issues with regard to his federal claims and granted summary judgment to the defendants. In addition, the district court dismissed the state law claims for lack of jurisdiction. This appeal followed.

_____

[1] According to the police report, other individuals would periodically approach the two suspects, at which time one of the suspects would walk behind an adjacent building and out of sight. The suspect would return to the others in approximately fifteen minutes, and both suspects would then walk out of view. See J.A. at 78.

3

II.

Burgess' federal claims, brought pursuant to 42 U.S.C. §§ 1983, 1985, were premised on Burgess' contention that Lee and Stanton violated his constitutional rights. However, Burgess' complaint did not state precisely what rights were at issue or how they were violated. As the defendants stated below, Burgess' federal claims were "at best ambiguously stated,"[2] and indeed reference only the "rights, privileges, and immunities provided by the Constitution and laws of the United States including but not limited to, the right of privacy, the right to bodily security, and the Fourteenth Amendment,"[3] as well as "the equal protection of the laws . . . equal privileges and immunities under the laws, and other rights provided under the Constitution."[4] In granting summary judgment, the district court found that the facts alleged by Burgess amounted only to claims that the actions of Lee and Stanton were an unreasonable seizure in violation of the Fourth Amendment and that the same actions "violate[d] due process by shocking the judicial conscience."[5] Based on the facts presented, the court found "no violation of any clearly established federal constitutional right" and therefore determined that the defendants were entitled to qualified immunity from suit and entered summary judgment accordingly.[6] We agree.

From a reading of Burgess' brief, we can discern five separate arguments: four regarding violations of clearly established Fourth Amendment rights and one regarding the district court's dismissal of Burgess' state law claims. Burgess alleges that three separate unlawful seizures took place: (1) When Lee and Stanton decided to approach and detain Burgess and Smith on suspicion of selling drugs; (2) When Lee drew his handgun as he and Stanton approached Burgess and Smith; and (3) When Lee's handgun discharged, wounding Burgess and Smith. Burgess also argues that the defendants violated his Fourth Amendment rights by searching him after he was wounded

_____

**2** J.A. at 23.
**3** <u>Id.</u> at 8.
**4** <u>Id.</u> at 9.
**5** <u>Id.</u> at 108.
**6** <u>Id.</u> (citing <u>Wagner v. Wheeler</u>, 13 F.3d 86 (4th Cir. 1993)).

4

and alleges that the court erred in dismissing his state law claims against the defendants. We consider each argument in turn.

First, we hold that Lee and Stanton's initial seizure of Burgess-- approaching Burgess and Smith and ordering them to"freeze"--did not violate a clearly established right under the Fourth Amendment. Terry v. Ohio[7] and United States v. Sokolow[8] authorize law enforcement to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity `may be afoot,' even if the officer lacks probable cause."[9] In United States v. Perrin,[10] we upheld the constitutionality of such a stop based on an anonymous tip on the ground that the tip, coupled with the observations of the officers in question, created a "`totality of the circumstances--[a] whole picture'"[11] that gave rise to a reasonable and articulable suspicion that criminal activity was taking place.

We are satisfied that Officers Lee and Stanton faced a set of factual circumstances that clearly gave rise to a reasonable suspicion that Burgess and Smith were selling illegal drugs. The anonymous tip, together with the officers' observations of Burgess' and Smith's activities, constitute a factual picture that is plainly sufficient to lead a reasonable officer to suspect that illegal conduct was taking place. Therefore, we hold that the officers' seizure of Burgess and Smith was valid and that it did not constitute a violation of any clearly established federal constitutional right.

Next, we consider whether Lee's decision to draw his handgun in the process of seizing Burgess and Smith was reasonable. Based on our holding in Foote v. Dunagan,[12] we conclude it was. In Foote, we

_____

[7] 392 U.S. 1 (1968).
[8] 490 U.S. 1 (1989).
[9] **United States v. Sokolow**, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).
[10] 45 F.3d 869 (4th Cir. 1995).
[11] **United States v. Perrin**, 45 F.3d 869, 872 (4th Cir. 1995) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).
[12] 33 F.3d 445 (4th Cir. 1994).

deemed reasonable an officer's drawing of a gun during an investigative stop on the ground that "[a]n officer is`authorized to take such steps as [are] reasonably necessary to protect[his] personal safety and to maintain the status quo during the course of[a Terry] stop.'"**13**

In the instant case, there is no evidence in the record to controvert Lee's testimony that he reasonably believed it was necessary to draw his handgun in order to protect himself. Like the officer in Foote, Lee had been informed that the suspect he believed he was approaching was likely to be armed. And even without such information, an officer who approaches two potential drug dealers at night in a high crime area does not act unreasonably when he draws his gun, points its downward, and prepares to protect himself if necessary.

With regard to the discharge of Lee's gun, the district court found the discharge was clearly accidental. Based upon a review of the facts, we affirm that finding. First, we note that the bullet from the discharge never struck Burgess. Rather, a fragment of that bullet, which ricocheted off the pavement between Burgess and the officers, struck Burgess in the leg. In addition, aside from Burgess' own speculative testimony, the evidence in the record clearly indicates that Lee discharged his handgun while pointing it downward, not in the direction of Burgess and Smith.**14** Therefore, we agree that the discharge of Lee's handgun was indeed accidental.

Accordingly, we affirm the district court's conclusion that Lee's discharge of the handgun did not violate any clearly established right under the Fourth Amendment. As we held in Rucker v. Harford County,**15** for there to be an illegal seizure for Fourth Amendment purposes, there must be an intent to seize on the part of the officer in question.

_____

**13 Foote v. Dunagan**, 33 F.3d 445, 448 (4th Cir. 1994) (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)).
**14 See**, e.g., J.A. at 43 (report of Peter D'Antuono, who investigated the incident, stating that a mark on the pavement at the scene indicated that bullet was fired "at a downward angle"); id. at 76 (Lee's sworn statement that the discharge was accidental); id. at 68 (Smith's admission that he did not see Lee point the handgun at him and that the discharge may have been unintentional).
**15** 946 F.2d 278, 281 (4th Cir. 1991).

6

Accidental conduct on the part of law enforcement does not qualify, as "`unintended consequences of government action [cannot] form the basis for a fourth amendment violation.'"**16**

Further, we agree with the district court's determination that Lee and Stanton were justified in searching Burgess after he was struck by the bullet fragment.**17** Courts have consistently considered searches of wounded individuals "entirely reasonable . . .`strictly tied to and justified by' the exigencies of the situation." **18**

Therefore, we agree with the district court's determination that Burgess has presented no genuine issues of material fact regarding his broad allegations that Lee and Stanton violated his clearly established constitutional rights. Accordingly, we affirm the district court's grant of summary judgment to the defendants on Burgess' federal claims.

Finally, we affirm the district court's dismissal of Burgess' state law claims. Burgess challenges the district court's dismissal of these claims solely on the ground that, because the state claims are now barred by Maryland's statute of limitations, such dismissal will deny him any relief on those claims. However, as the defendants note in their brief, in making this argument, Burgess ignores Maryland's "savings statute,"**19** which expressly states that "if an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law and the foreign court enters an order of dismissal for lack of jurisdiction . . . an action filed in this State within 30 days after the foreign court's order of dismissal shall be treated as timely filed in this State."**20**

As the district court clearly dismissed Burgess' pendent state law claims for lack of jurisdiction,**21** we find that, contrary to Burgess'

_____

**16 Rucker v. Harford County**, 946 F.2d 278, 281 (4th Cir. 1991) (quoting Ansley v. Heinrich, 925 F.2d 1339, 1344 (11th Cir. 1991)).
**17** J.A. at 109.
**18 Russell v. Cox**, 326 F. Supp. 27, 30 (W.D. Va. 1971) (quoting Warden v. Hayden, 387 U.S. 294, 310 (1967) (Fortas, J., concurring)).
**19** MD. CODE ANN., Maryland Rules § 2-101 (1998).
**20** MD. CODE ANN., Maryland Rules § 2-101(b) (1998).
**21 See** J.A. at 109.

7

argument here, Burgess could have refiled those claims in state court. Accordingly, there was no foreclosure of remedy on these state law claims, and we therefore decline to disturb the district court's decision in this regard.

III.

Based on the foregoing, we affirm the district court's order granting summary judgment to the defendants on Burgess' federal claims and dismissing Burgess' state law claims. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

8