## CIRCUIT COURT OF LOUDOUN COUNTY

Dawson, L.C., et al.

    v.

Loudoun County
Board of Supervisors

Case No. (Chancery) 20768

October 22, 2001

BY JUDGE THOMAS D. HORNE

This case arises out of a rezoning request submitted by Dawson, L.C., to the Loudoun County Board of Supervisors. Dawson, L.C., is the contract purchaser of 225 acres of land zoned A-3 (agricultural residential) located on the east side of Virginia State Route 659 in Mercer Magisterial District of Loudoun County, Virginia. The existing A-3 zoning would permit agricultural uses and residential development using private well and septic drainfield facilities constructed in accordance with county and state standards at a density of up to one dwelling unit per three acres.

On January 31, 2000, the County of Loudoun accepted a request submitted by Dawson, L.C., to rezone the property to R-4 (residential). Were the property to be rezoned to the R-4 district, the applicant would be permitted to build up to 447 residential units on the property, including 28 "affordable housing" units. The Board of Supervisors rejected the rezoning request, and this action for declaratory and other relief followed.

Complainants allege that the existing A-3 zoning as applied to their property is unreasonable, arbitrary, and capricious and bears no reasonable relationship to the public health, safety, and welfare. Furthermore, they contend that the denial of the rezoning application violates their rights to equal protection and substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

The bill of complaint represents that the County has elevated the comprehensive plan to the status of a zoning ordinance. Thus, by relying upon the plan, rather than the provisions of a duly adopted zoning ordinance, the Board has attempted to exact proffers, impact fees, and public facilities not provided for by ordinance and that are *ultra vires*, illegal, arbitrary, capricious, unreasonable, discriminatory, exclusionary, and confiscatory. As part of the rezoning process, complainants challenge the County's requirement that they make cash contributions generated by public demand and not by uses proposed by the complainants as part of the rezoning.

Although the complainants have set forth a count alleging a violation of the Federal Fair Housing Act, they have elected to nonsuit that claim.

Respondents have filed a demurrer to the seven-count bill of complaint. In evaluating the demurrer, the Court is guided by the directive that it must consider only those facts that are set forth in the bill of complaint and that are alleged by inference or implication. The instant case presents similar issues to those reviewed by the Court in *Gum Springs, L.C. v. Loudoun County Supervisors*, Chancery No. 20677 (Circuit Court of Loudoun County, July 27, 2001). Where applicable, portions of that decision will be incorporated in the instant letter opinion.

In summary, the complainants suggest that the demand for housing, existence of available facilities, changes in zoning of surrounding parcels, and disparate treatment with other rezoning requests make their request one subject to judicial review. Upon such review, it is their contention that the court will find the existing zoning of the parcel bears no reasonable

relationship to the public's health, safety, and welfare and that the actions of the board were arbitrary and capricious. Moreover, they assert they are entitled to independent relief for the Board's deprivation of rights guaranteed them under the Constitution of the United States.

In his concurring opinion in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), Justice Breyer noted that the presence of a finding of vindictiveness and ill will in that case was "sufficient to minimize any concern about transforming run-of-the-mill zoning cases into cases of constitutional right." *Id.* at 566. The present pleadings, while they present a case for judicial review of an exercise of the police power by the Board, do not elevate these proceedings to one in which recovery may be had predicated upon a purposeful deprivation of due process and equal protection. Do the instant pleadings justify recovery pursuant to 42 U.S.C. §§ 1983, 1988? As pleaded they do not. Need this Court explore whether the Board has imposed conditions to approval of the rezoning that are lacking in proportionality and relationship to the request? Based upon the admitted voluntary nature of the proffers, it need not.

The Court will address individually each of the counts of the bill.

### County of Loudoun as a Party

The Court has determined that the Bill of Complaint states sufficient facts to permit an evidentiary hearing of the matter of the rezoning. As to the remaining matters complained of, the Court has determined those counts, as pleaded, to be lacking in legal merit. The General Assembly has provided that:

> [e]very action contesting a decision of *the local governing body* adopting or failing to adopt a proposed zoning ordinance or amendment thereto or granting or failing to grant a special exception shall be filed within thirty days of the decision with the circuit court having jurisdiction of the land affected by the decision. However, nothing in this subsection shall be construed to create any new right to contest the action of a local governing body.

Va. Code Ann. § 15.2-2285(F) (Michie 1997) (emphasis added).

The governing body of the County of Loudoun is the Board of Supervisors. Accordingly, the demurrer will be sustained as to the County of Loudoun.

## Count I: *Violation of Virginia Law*

In his argument, counsel for the complainants dramatically demonstrated the position of his clients by drawing a single red line on a piece of paper. He noted that this line represented the arbitrary line that the Board had drawn upon the map of Loudoun County as a means of limiting growth. He suggests that his client's property falls on the side that would wrongfully subject him to an existing zoning that has, by reason of changed circumstances and public demand for housing, been rendered unreasonable. Such a line, he suggested, is the product of planning concepts not incorporated into zoning laws.

Thus, in denying the rezoning, they suggest the Board acted arbitrarily in refusing to unburden the complainants from the application of zoning restrictions that no longer bear any relationship to the health, safety, and welfare of the community and are incongruous with the rezoning of surrounding properties. To create what the complainants' counsel describes as a "Maginot line" is, as their argument continues, to apply a de facto moratorium upon development in the County despite a demand for homes and of available resources in the area to support residential growth. Where resources are not already in place, they contend that the voluntary proffers they have made adequately fill the vo*Id.* This moratorium, identified as the "Smart Growth Moratorium," is purportedly based upon a report entitled "A Smart Growth Strategy for Loudoun County" dated October 20, 1999.

It is alleged that, in establishing such a moratorium within the designated area, it was the intent of the Board of Supervisors to. delay or stop development of homes and preclude low and moderate income persons from having access to affordable housing in the area of the complainants' property. In addition, the complainants contend that the Board discriminated against them by approving the residential rezoning of another parcel in the same area within a week of the denial of complainants' application.

In *Board of Supervisors of Fairfax County v. Williams*, 216 Va. 49 (1975), the Supreme Court noted four important factual findings of the trial court in reaching a conclusion that the action of the Board in denying an application for rezoning was not fairly debatable. Those findings are the (1) availability of public facilities, (2) rezoning of similarly situated property already rezoned for higher density, (3) unreasonable and invalidity of existing zoning, and (4) discriminatory treatment in the rezoning of land. Accordingly, the failure to rezone and the continuation of existing lesser density zoning was unreasonable arbitrary and capricious. Those factors have been pleaded in this case, and the complainants have fashioned their pleadings to fit them.

The Board's denial was a legislative act, and legislative acts are generally presumed to be reasonable. *Gregory v. Board of Supervisors*, 257 Va. 530, 537 (1999). As it relates to zoning, legislative acts must bear a reasonable or substantial relation to the public's health, safety, or general welfare in order to be reasonable. *Board of Supervisors v. Allman*, 215 Va. 434 (1975).

> The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary, or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare.

*Id.* at 444.

However, "the presumption of reasonableness is not absolute. Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness." *Id.* at 445 (quoting *Fairfax County v. Snell Corp.*, 214 Va. 665, 669 (1974)).

Have the complainants stated a claim sufficient to justify a plenary hearing upon a timely filed application for judicial review of the denial of their rezoning request? Without descending into a detailed analysis of the distinct allegations or their merits, the Court finds that Count I, when considered by the standard applicable to demurrers, is sufficient to state a claim. If proven, the cumulative effect of an alleged failure of the Board to properly weigh and consider the articulated statutory concerns and an attendant discriminatory treatment would render the instant action of the Board an arbitrary and capricious exercise of its power to zone.

The demurrer is overruled as to Count I of the bill of complaint.

Count II: *Deprivation of Equal Protection of Law Guaranteed by the United States Constitution Actionable under 42 U.S.C. § 1983*

The respondents have raised the issue of the Board's immunity from suit in this case. Complainants contend that it is only the individual board members who may claim such immunity and that the acts alleged are

ministerial and not legislative in nature. While the Court may agree that it is only the individual legislators who may enjoy such relief, it is not essential to a determination of the demurrer.

In order for this Court to permit the complainants to pursue this claim, it would be necessary that the Court find that the actions of the Board were done out of spite or ill will. The pleadings belie such a motive.

Complainants contend they are entitled to recover upon a "class of one" claim with respect to the alleged equal protection violation perpetrated upon them by the Board. 42 U.S.C. § 1983. A recent commentary upon the Willowbrook decision describes the nature of such claims and the difficulties faced by courts in reviewing such claims. *A Standard for "Class of One" Claims Under the Equal Protection Clause of the Fourteenth Amendment: Protecting Victims of Non-Class Based Discrimination From Vindictive State Action,* 35 Val. U. L. Rev. 197 (2000). In that commentary, the author noted:

> Grace Olech's case represents a situation that many individuals find themselves in as the result of irrational or vindictive treatment by state or local officials. Individuals, such as the Olechs, are singled out for differential treatment, causing physical and mental anguish. One avenue of relief is a claim under the Equal Protection Clause, which declares that a state government shall not "deny to any person within its jurisdiction the equal protection of the laws." While this language has been interpreted to mean that all persons similarly situated should be treated alike, it does not offer much guidance for courts seeking to apply its principles. Despite the lack of clear standards, the Equal Protection Clause has traditionally been interpreted to protect members of vulnerable groups and the exercise of fundamental rights from arbitrary government conduct.
>
> Recently in *Village of Willowbrook v. Olech*, the United States Supreme Court affirmed that the Equal Protection Clause protects individuals, as well as vulnerable groups and fundamental rights from vindictive state action. This approach to Equal Protection jurisprudence is referred to as a "class of one" claim. Under this theory, individuals, like the Olechs, who have been victimized by state or local officials, but who do not have a claim under a traditionally recognized category, can file a claim in federal court under 42 U.S.C. § 1983. These claims arise when a state or local government official inequitably administers a state statute or local

ordinance. They often occur in the context of land use, zoning, licensing, and the provision of governmental services.

*Id.* at 200 (citations omitted).

An analysis of a "class of one" claim involves a subjective and objective review. It is necessary that not only there be evidence of intent on the part of the party subject to suit but that there be no objective rational basis for the action taken. *Id.* at 227.

The instant "class of one" claim relies upon a generalized intent to delay development and impose a moratorium on growth. While another similarly situated applicant has received a favorable rezoning, there is nothing in the pleadings to indicate such was the product of spite or ill will.

Complainant's allegations do not present a facial challenge to the Loudoun County Zoning Ordinance; rather, they argue that the Board's particular legislative action in applying the ordinance was improper and should be enjoined.

The Equal Protection Clause of the Fourteenth Amendment commands that "all persons similarly situated . . . be treated alike." Where government action does not burden a fundamental right or involve a classification such as race, sex, or natural origin, it is "presumed to be valid and will be sustained if the classification . . . is rationally related to a legitimate state interest." City of *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439-40 (1985).

Complainants do not allege the classifications embodied within the Ordinance lack the appropriate "rational basis" or that the Ordinance is discriminatory on its face. They claim that facially neutral policies are unequally applied to them. "To prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." *Sylva Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 819 (4th Cir. 1905) (cited in *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). In *Sylva*, the court stated:

> The unlawful administration by state officers of a statute fair on its face, resulting in unequal application to those who are to be treated alike, is not a denial of equal protection unless there is shown to be present an element of intentional or purposeful discrimination.

*Id.* at 819.

Even if the Board's action were found to have had a disparate impact upon complainants' lands, it will not be found to violate the Equal Protection

Clause unless the plaintiff demonstrates that the action was motivated, at least, in part, by an "individually discriminatory" intent "and that the same decision would not have resulted had the impermissible purpose not been considered." *Id.* at 819.

Like the metaphor of its French counterpart, the zoning decision complained of targets not the property of the complainant, but cuts a swath across many lot lines on the map of Loudoun.

Complainants' allegations that the Board's purpose in denying the application was to effect a *de facto* moratorium does not constitute an allegation of invidiously discriminatory intent. Nor is there an assertion that adjacent properties were previously granted rezoning sufficient to state such a claim. To the extent that the pleadings seek to leverage a claim out of the issue of adjacency, it is to be remembered that such adjacency alone does not support an Equal Protection claim. *Helmick v. Town of Warrenton*, 254 Va. 225, 231 (1997) (cited in *Board of Supervisors v. Rowe*, 216 Va. 128, 135 (1975)).

Complainants must do more than state the conclusory assertion that the Board's action was taken without legal justification or excuse in order to state an Equal Protection claim under 42 U.S.C. § 1983. The Court sustains the demurrer to Count II of the Bill of Complaint.

Count III: *Transportation Policies Constitute Illegal Impact Fees and are Ultra Vires, Void ab Initio, Illegal, and Unconstitutional*

Attached to the Bill of Complaint is the proffer statement of the complainants. Accordingly, it is properly considered along with the pleadings and demurrer. *Ward's Equipment, Inc. v. New Holland North Am., Inc.*, 254 Va. 379 (1997). The proffer statement unequivocally proclaims that the proffers are voluntary. Thus, it states, "Pursuant to Section 15.2-2303, Code of Virginia, 1950, as amended and Section 6-1209 of the Loudoun County Zoning Ordinance (1993), as amended . . . the Owners . . . hereby voluntarily proffer that development of the Property shall be in substantial conformity with the proffers set forth below. . . ."

To now assert that such proffers are something other than voluntary confounds the allegations contained in the bill of complaint with the position taken before to the Board. To the extent the complainant seeks to assert the rights of others, they state no basis for such a claim.

It is unnecessary to discuss in detail whether there has been an illegal execution of conditions contrary to the principle of nexus and proportionality set forth in *Doland v. City of Tigard*, 512 U.S. 374 (1999); *City of Monterey v. Del Monte Dunes Corp.*, 526 U.S. 687 (1999). The Court refers the parties to the discussion of these cases in its earlier letter opinion in *Gum Springs, L.C. v. Loudoun County Supervisors et al.*, Chancery No. 20677 (Circuit Court of Loudoun County, July 27, 2001.)

The demurrer will be sustained to Count III of the bill of complaint.

## Count IV: *Applying the General Plan Transportation Policies to the Application is Illegal and Unconstitutional*

Complainants contend that the County has unlawfully conditioned approval of the rezoning application upon "impact fees" for road improvements. They claim such demands are substantially greater than those proffered by similar applicants and are unauthorized.

Complainants' pleadings are subject to demurrer for the same reasons as those stated in Count III. Their incorporation of the papers into their pleadings belies their argument as to the illegality and unconstitutional nature of the proffers. The papers indicate the proffers are the voluntary act of the Complainants.

The demurrer will be sustained as to Count IV of the bill of complaint.

## Count V: *The County has Elevated Its Comprehensive Plan and the DSAMP to the Status of a Zoning Ordinance*

As noted earlier, the complainants have attached to their pleadings the proffer document that concedes that the proffers are voluntary. The Court agrees with the arguments of the respondents that this count is defective for a variety of reasons. Complainants suggest that the County has adopted policies, including "without limitation" the General Transportation Plan Policies, and "has demanded conformity with those policies in a manner that has elevated the comprehensive plan to the status of a zoning ordinance." These policies have not been identified.

The General Plan and the DSAMP are parts of the comprehensive plan. As counsel for the Board has observed, "a comprehensive or master plan does not have the status of a zoning ordinance. It is advisory only and serves as a guide to a zoning body." *Board of Supervisors of Fairfax County v. Allman*, 215 Va. 434, 441 (1975).

Thus, as a matter of law, such plans cannot be enforced as zoning laws. The demurrer will be sustained as to Count V of the bill of complaint.

Count VI: *Deprivation of Substantive Due Process*
*Guaranteed by the United States Constitution*
*Actionableunder 42 U.S.C. § 1983*

Complainants assert that the Board's action constituted a deprivation of substantive due process as it is guaranteed by the Virginia and United States constitutions.

In general, "substantive due process tests the reasonableness of a statute vis-à-vis the legislature's power to enact a law. Ordinarily, substantive due process is satisfied if the legislation has a §reasonable relation to a proper purpose and [is] neither arbitrary nor discriminatory'." *Etheridge v. Medical Centers Hospitals*, 237 Va. 87, 97 (1989).

Of the difference between equal protection and due process claims, it has been written that:

> Like the Equal Protection Clause, the Substantive Due Process Clause protects fundamental rights. Fundamental rights under Substantive Due Process include marriage, procreation, and familial privacy. In addition to fundamental rights, the Substantive Due Process Clause also protects individuals from arbitrary government conduct. . . . The Equal Protection Clause is violated when the government intentionally treats persons who are similarly situated differently, while the Due Process Clause is violated when the government treats someone irrationally, even if it treats everyone similarly. Substantive Due Process claims are also distinguishable from Equal Protection claims because some courts require a Substantive Due Process plaintiff to show that the government arbitrarily deprived them of a liberty or a property interest. These two claims can overlap, however, when a government official takes vindictive action against and individual, treating him differently from others who are similarly situated.

*A Standard for "Class of One" Claims Under the Equal Protection Clause of the Fourteenth Amendment: Protecting Victims of Non-Class Based Discrimination From Vindictive State Action*, 35 Val. U. L. Rev. 197, 252-54 (2000).

In general, the guarantees of due process offer protection against deprivation of property that is accomplished by arbitrary legislative action. In order to state a claim, the complainants must sufficiently allege that (1) they had a property interest; (2) the Board deprived them of this property interest; and (3) the Board's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. *Sylvia Dev. Corp.*, 48 F.3d 810, 827 (4th Cir. 1995). As previously noted, the complainant has in Count I stated a viable claim for judicial review of the Board's failure to grant the rezoning.

It has been held that, "in the context of a zoning action involving property, it must be clear that the state's action 'has no foundation in reason and is a mere arbitrary or irrational exercise power'." *Id.* at 827 (quoting *Nectow v. Cambridge*, 277 U.S. 183, 187-88 (1928)). Complainants must allege that the purpose of the Board's action has "no conceivable rational relationship" to a legitimate public purpose. *Id.* at 827.

Complainants assert that they have a right to maintain this action based upon their interests in the property affected by the zoning. Thus, ownership of the "dirt" permits them to pursue a claim for relief pursuant to 42 U.S.C. § 1983. Had they argued that the interest affected was entitlement to the requested rezoning, such a claim would fail, since "any significant discretion" on the part of the Board to deny the rezoning would defeat such a claim. *Biser v. Town of Bel Air*, 991 F.2d 100, 104 (4th Cir. 1993) (citing *Gardner v. Baltimore Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992)).

Moreover, if it could be said that the applicant has a property interest in a reasonable zoning classification, it does not follow that the Board's denial of the particular zoning request constitutes a deprivation of that interest, as is required to properly state a claim of deprivation of substantive due process.

Assuming that a sufficient property interest has been stated, absent from the complaint is any allegation that the Board's denial of the application is "so unjustified by any circumstance or government interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Sylvia Dev. Corp.*, 48 F.3d at 827 (citing *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir. 1991), cert. denied 502 U.S. 1097 (1992)).

It would appear that the Due Process Clause of the Virginia Constitution does not provide for any greater rights than those afforded by the Federal Constitution. *Archer v. Mayes*, 213 Va. 633 (1973) (Equal Protection Clause of the Fourteenth Amendment). To the extent that complainants fail to state a

federal claim, so too does it fail to state a claim under the Virginia Constitution.

Accordingly, the demurrer to Count VI of the bill of complaint is sustained.

April 11, 2002

By Judge James H. Chamblin

This cause came before the Court on April 5, 2002, for argument on the Motion to Compel Answers to Interrogatories filed herein by the Respondent, Board of Supervisors of Loudoun County, Virginia ("the Board"), requesting that the Court compel the Complainants, Dawson, L.C., Wray S. Dawson, and R. J. Dawson (collectively "Dawson") to answer under oath fully, completely, and without objection the Board's First Set of Interrogatories.

After consideration of the Motion, the Complainant's Response to Discovery Motions, and the argument of counsel, the Motion is granted but only to the extent that Dawson must specify the business records referred to in the answer to Interrogatory 11.

At argument counsel resolved the issue of the answers not being under oath.

After reviewing the answers, I do not feel that the answers to interrogatories 2 to 5, 6, 8, 9, and 12 are vague, unresponsive, or evasive. The answers do contain a considerable amount of the facts alleged in the Bill of Complaint, but that alone does not make the answers unresponsive. It is not a question of whether the answers contain sufficient facts to support Dawson's claims. As to facts that are also alleged in the Bill of Complaint, they were properly considered when another judge of this Court ruled on the Board's Demurrer. As to facts set forth in the answers to interrogatories, they may form the basis for summary judgment under Rule 2:21.

The Board argues that Dawson's response to interrogatories 3, 4, 5, and 8, namely, that answering them would require expert opinions from experts not yet retained, is not a proper basis for refusing to respond to these interrogatories now. I disagree. I do not consider it to be an objection or an otherwise improper response. Considering the nature of this litigation, it is conceivable that experts could develop additional facts in answer to the interrogatories. The Complainants are under an obligation to supplement their answers.

Counsel stated that the Complainants must designate their experts sometime in July under the pretrial scheduling order. The only scheduling order in the court file is one entered by Judge Horne on March 4, 2002, that merely sets the date for trial and the pretrial conference. It is silent as to dates for designation of experts. In any event, if the Board feels that it is under some sort of disadvantage because the Complainants have three more months or so to designate experts, then its problem is one of scheduling pretrial procedures and not sufficiency of answers to interrogatories.

Under Rule 4:8(f), if a party decides to exercise the option to provide business records in lieu of answering an interrogatory, then the strict requirements of the Rule must be met. Rule 4:8(f) provides:

> (f) *Option to Produce Business Records.* — Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract, or summary based thereon, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, *it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit, or inspect such records and to make copies, compilations, abstracts, or summaries.* A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

(Emphasis added.)

The interrogatory in question and the answer are as follows:

> 11. Describe in detail any and all efforts by you to make, or to investigate how to make, economically viable use of the property under the A-3 district, the R-4 district, or any other zoning district, and the results of all such efforts and investigations.

> *ANSWER*: Complainants exercise their option to produce business records pursuant to Rule 4:8(f). Under Rule 4:8(f), Defendants are to be afforded a "reasonable opportunity to examine, audit, or inspect such records and to make copies, compilations, abstracts, or summaries."

I think the answer does not meet the requirement of Rule 4:8(f) that the records must be specified. The Board feels that the burden of deriving or ascertaining the answers is not substantially the same as for Dawson. However, I do not see how that can be determined until the records are at least specified.

Dawson shall specify the business records from which the answer may be derived or ascertained on or before April 30, 2002.